682 So.2d 175 (1996)
Rodney MATHIS, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1574.
District Court of Appeal of Florida, First District.
October 8, 1996.
Rehearing Denied November 18, 1996.
*176 Nancy A. Daniels, Public Defender; Alisa Smith, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Richard Parker, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of his convictions for sexual battery upon a "mentally defective" victim *177 and a lewd, lascivious or indecent assault or act upon or in the presence of a child. Although he raises a number of issues, we find it necessary to address only two: (1) whether the trial court erroneously admitted the alleged child victim's out-of-court statements in the absence of legally sufficient findings of fact to establish that the child had a functional age of 11 or younger, and that the statements were reliable; and (2) whether the evidence was legally sufficient to establish that the alleged victim of the sexual battery was "mentally defective." We conclude that the trial court's findings were legally insufficient to support admission of the alleged child victim's out-of-court statements, and that the evidence was legally insufficient to establish that the alleged victim of the sexual battery was "mentally defective." Accordingly, we reverse.

I.

Admission of Child Victim's Out-of-Court Statements
The state alleged that appellant had committed a sexual battery and a lewd assault upon the victim, who at the time of the offenses was 12 years old and "mentally defective," as that term is defined in section 794.011(1)(b), Florida Statutes (1993). At trial, the alleged victim, who was then 13 years old, testified. Her testimony was relatively vague and confused. With the intent of corroborating that testimony, the state proffered the testimony of Officer Wright, who had investigated the case. His testimony was corroborative of, and considerably more detailed than, that of the alleged victim.
Immediately following the proffered testimony of Officer Wright, the prosecutor reminded the trial court of its obligation to make findings regarding whether "the time, content, and circumstances" of the out-of-court statements of the victim "provide sufficient safeguards of reliability" to justify their admission into evidence pursuant to section 90.803(23) of the Florida Evidence Code. After acknowledging that it was aware of its responsibility pursuant to that provision, the trial court made the following statement on the record:
The court iswould make the following findings as to this case:
I think the childwell, obviously, the child has, in fact, testified in the case.
The court does find the child can be led.
On the other hand, the details supplied by Officer Wright as to the directions to the airport, the specific detail as to rough, smooth, then rough, the overall description provide enough indicia of reliability that the statement should be admitted.
I think the relationship of the child to the offender is such that the child obviously knows him. I mean, he'sI don't think that's really in doubt at all.
I think the big question for the jury, of course, is going to be thewhether this whether this actual [sic] took place of sexual misbehavior.
I think everything else, though, is pretty clear, is going to relate. The child's testified clearly, somewhat hesitantly. I think the child is able to relate.
I think that the hearsay testimony provided is proper in this case because I don't think the child's testimony in and of itself isit's weak, in that I think she does have a hard time understanding things. She had a difficult time understanding before and after. But I think that her taking Officer Wright around was reliable testimony. I think Officer Wright has demonstrated, through his training, experience, that he's dealt with cases and understands that you do let them do the talking and that you don't try to put words in their mouth.
Appellant's counsel immediately objected to the findings.
Officer Wright subsequently testified before the jury, offering essentially the same testimony as he had previously given during the proffer. Before his testimony, the trial court acknowledged the previous objection of appellant's counsel, and indicated that it would treat the objection as a continuing one. After the state had concluded its case-in-chief, and immediately before appellant's counsel moved for a judgment of acquittal, the trial court made another statement on the record, intended to augment its previous *178 findings made pursuant to section 90.803(23) of the evidence code. It said:
I would like to add one finding. I'm not sure whether I said it or not, but under the hearsay exception that we talked about, I made several findings. One of which I don't know that I announced or not, and that has to do with the mental emotional developmental age of the child being 11 or less. This child was over 11 chronologically, but the court would find that the testimony does support a developmentdevelopmental age of 11 or less at the time of the incident, so I'd like to place that on the record ... for further finding.
On appeal, appellant argues that he is entitled to a new trial because the findings of fact made by the trial court as to the functional age of the alleged child victim, and as to the reliability of the out-of-court statements made by the alleged child victim to Officer Wright, were legally insufficient. The state responds, first, that this issue was not preserved for appellate review by a contemporaneous objection. In the alternative, the state contends either that the trial court's findings were legally sufficient or, if insufficient, that any error was harmless.
We find unpersuasive the state's argument that this issue was not preserved for appellate review. It seems to us relatively clear from a reading of the relevant portions of the record that both the state and the trial court understood that the objection made by appellant's counsel went to the legal sufficiency of the trial court's findings. Based on Hopkins v. State, 632 So.2d 1372, 1376 (Fla. 1994), we conclude that "[t]he trial court was put on notice of the potential error." See also In the Interest of R.L.R., 647 So.2d 251 (Fla. 1st DCA 1994) (issue of sufficiency of findings pursuant to section 90.803(23) preserved for review because, read in context, objection clearly put parties and court on notice of its basis). Accordingly, we conclude that the issue was preserved for appellate review.
Among the prerequisites to admissibility, pursuant to section 90.803(23), of an out-of-court statement by a child who is alleged to have been the victim of abuse or neglect are the requirements that the alleged child victim have "a physical, mental, emotional, or developmental age of 11 or less," and that the trial court find "that the time, content, and circumstances of the statement provide sufficient standards of reliability." Section 90.803(23)(c) expressly requires that the trial court "make specific findings of fact, on the record, as to the basis for its ruling" either admitting or excluding such a statement. See Hopkins, 632 So.2d at 1377 (section 90.803(23) clearly requires specific findings; "[m]ere recitation of the boilerplate language of the statute ... is not sufficient"). Moreover, if the trial court's findings are insufficient to comply with the statute, a reviewing court should not look behind those findings to determine whether, notwithstanding the insufficiency of the findings, the evidence is sufficient to sustain the trial court's ruling regarding admissibility of the statement. See generally Leggett v. State, 565 So.2d 315 (Fla.1990) (refusing to look behind legally insufficient findings of trial court offered to support conclusion that child could testify by videotape, pursuant to section 92.53, Florida Statutes, to determine whether evidence would support conclusion).
It is unclear to us whether the prerequisite to admissibility that the alleged child victim have "a physical, mental, emotional, or developmental age of 11 or less" is intended, as the trial court presumed, to refer to the child's age when the alleged offense occurred, or at some other time, such as the time of trial. Our research has not disclosed any decision addressing this issue. While clearly a question which could be of considerable importance in a particular case, we find it unnecessary to resolve it here. Regardless of the determinative event for purposes of application of this requirement, it is apparent that the trial court's finding was nothing more than a restatement of the statutory language. No facts were recited to support the conclusion that the alleged child victim had a "developmental age of 11 or less at the time of the incident." Absent specific findings reflecting the basis for the trial court's conclusion, this court is unable intelligently to review, and to determine the correctness of, that conclusion. E.g., Feller v. *179 State, 637 So.2d 911 (Fla.1994); Hopkins; State v. Townsend, 635 So.2d 949 (Fla.1994).
For the same reasons, we conclude that the trial court's findings regarding reliability of the alleged child victim's out-of-court statements are legally insufficient. The trial court made the following findings: (1) that the child had testified; (2) that the child could "be led"; (3) that the child accurately described to Officer Wright the route to the location where the offenses allegedly were committed; (4) that the child knew appellant; (5) that the child testified "clearly," but "somewhat hesitantly"; (6) that the child "is able to relate"; (7) that the child's testimony was "weak"; (8) that the child had "a hard time understanding things," such as "before and after"; and (9) that Officer Wright had dealt with similar cases in the past, and was trained not to try to put words into a child's mouth. The last finding is relevant to the "circumstances" under which the statements were made. However, it is difficult to perceive how the remaining findings have a bearing on the determinative issuewhether "the time, content, and circumstances of the statement[s] provide sufficient safeguards of reliability." While it might be argued that the finding that Officer Wright corroborated the accuracy of the child's description of the route to the location where the alleged offenses were committed was relevant, the reliability of the statements must be determined independent of any corroborating evidence. State v. Townsend, 635 So.2d 949, 957-58 (Fla.1994). To the extent that the remaining findings were intended by the trial court to refer to "the time, content, and circumstances of the statement[s]," it seems to us that they militate against a finding of reliability, rather than in favor of one. The trial court addressed few, if any, of the factors listed in either section 90.803(23)(a)1 or Townsend. Id. See generally Charles W. Ehrhardt, Florida Evidence § 803.23, at 697 (1996 ed.) (listing factors considered by various appellate courts as bearing on reliability of statements). In sum, we are unable to discern any substantive distinction between the findings made in this case and those found legally insufficient in a number of prior cases, including Hopkins; Garcia v. State, 659 So.2d 388 (Fla. 2d DCA 1995); Kertell v. State, 649 So.2d 892 (Fla. 2d DCA 1995); and In the Interest of R.L.R., 647 So.2d 251 (Fla. 1st DCA 1994).
We next address the state's argument that, to the extent that the trial court's findings were legally insufficient, such error was harmless. As the state correctly points out, Hopkins clearly stands for the proposition that the improper admission of the alleged child victim's out-of-court statements to Officer Wright is subject to a harmless error analysis. 632 So.2d at 1377. However, as the court explained in State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986):
Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
We have carefully reviewed the entire record in this case. Having done so, as in Arney v. State, 652 So.2d 437, 438 (Fla. 1st DCA 1995), "we are unable to `say beyond a reasonable doubt that the error did not affect the verdict.'" The state's case rested principally upon the testimony of the alleged victim, as corroborated by Officer Wright's testimony regarding her out-of-court statements to him. As we have previously noted, the child's testimony was relatively vague and confused. We are of the opinion that the jury might well have given considerable weight to Officer Wright's testimony regarding the out-of-court statements, which were made on the day following that on which the offenses were allegedly committed. Accordingly, what we said in Arney applies with equal force here"we are unable to divine what was in the jurors' minds when they rendered their verdict[s], or how much weight they attributed to the ... out-of-court statements. It is precisely for this reason *180 that we are unable to conclude that the error[][was] harmless." Id. at 439.
For the foregoing reasons, we are constrained to reverse appellant's convictions, and to remand for a new trial.

II.

Sufficiency of Evidence to Establish Victim Was "Mentally Defective"
Appellant also argues that the evidence presented at trial was legally insufficient to establish that the alleged victim was "mentally defective," as that term is defined in section 794.011(1)(b), Florida Statutes (1993), on the date of the alleged sexual battery. We must address this issue because, if appellant is correct, the state would be precluded on retrial from again attempting to prove that element. See, e.g., Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9 (1978) ("[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding").
The state charged appellant with sexual battery upon a "mentally defective" victim, in violation of section 794.011(4)(e), Florida Statutes (1993). "[S]exual battery upon a person 12 years of age or older, without that person's consent," and without the "use [of] physical force and violence likely to cause serious personal injury," is a second-degree felony. § 794.011(5), Fla. Stat. (1993). "[S]exual battery upon a person 12 years of age or older [,] without that person's consent,... [w]hen the victim is mentally defective and the offender has reason to believe this or has actual knowledge of this fact," is a first-degree felony. § 794.011(4)(e), Fla. Stat. (1993). The former is a lesser-included offense of the latter. § 794.011(6), Fla. Stat. (1993).
The term "mentally defective" is defined in section 794.011(1)(b), Florida Statutes (1993), which reads: "`Mentally defective' means a mental disease or defect which renders a person temporarily or permanently incapable of appraising the nature of his or her conduct." The similarity of this definition to the definition of insanity used in Florida criminal proceedings is apparent. See, e.g., Hall v. State, 568 So.2d 882, 885 (Fla.1990) ("accused is not criminally responsible if, at the time of the alleged crime, [he] was by reason of mental infirmity, disease, or defect unable to understand the nature and quality of his act or its consequences or was incapable of distinguishing right from wrong").
The state sought to establish that the alleged victim was "mentally defective" through the testimony of Tracey Bryant, a school psychologist. Ms. Bryant was permitted by the trial court to express opinions in the limited area of "the nature of testing and quantifying children as to mental handicap status." Ms. Bryant testified that she had administered some tests to the alleged victim approximately fifteen months before the date of the alleged sexual battery, for the purpose of determining the alleged victim's intelligence quotient (IQ). Based on those tests, Ms. Bryant had concluded that the alleged victim "fell right at the upper end of" what she referred to as the "trainable mentally handicapped range," and that she had a "mental and developmental age" of "between five [and] seven years." Ms. Bryant was not familiar with the term "mentally defective," as defined in section 794.011. Of critical importance is the fact that Ms. Bryant was not asked whether, on the date of the alleged sexual battery, the alleged victim was suffering from "a mental disease or defect which render[ed][her] temporarily or permanently incapable of appraising the nature of ... her conduct."
In fact, no direct evidence whatsoever was offered on the issue of whether, on the date of the alleged sexual battery, the alleged victim was suffering from "a mental disease or defect which render[ed][her] temporarily or permanently incapable of appraising the nature of ... her conduct." On appeal, the state argues that a reasonable juror might infer, from the alleged victim's IQ and "mental and developmental age" some fifteen months before the date of the alleged sexual battery, that the alleged victim was "mentally defective" on the date of the alleged sexual battery. We disagree. No evidence was offered as to the correlation, if any, between IQ and "mental and developmental age," and *181 the ability to understand "the nature" of one's "conduct." Children having a chronological age younger than the alleged victim's "mental and developmental age" have been found to possess a sufficient understanding of the difference between the truth and a lie, and the moral obligation to relate the former rather than the latter, so as to be competent to testify in court. See, e.g., Rivet v. State, 556 So.2d 521 (Fla. 5th DCA 1990) (4½-year-old alleged victim competent to testify in sexual battery prosecution); Leon v. State, 498 So.2d 680 (Fla. 3d DCA 1986) (5-year-old alleged victim competent to testify in sexual battery prosecution). In fact, in this case, the trial court concluded, we believe correctly, that the alleged victim was competent to testify.
On this issue, our standard of review is whether, viewing all of the evidence and inferences fairly to be drawn therefrom in a light most favorable to the state, a reasonable jury might have found that the alleged victim was "mentally defective," as that term is defined in section 794.011(1)(b), on the date of the alleged sexual battery. E.g., Taylor v. State, 583 So.2d 323 (Fla.1991). The relevant focus is on the legal sufficiency, rather than the weight, of the evidence. Tibbs v. State, 397 So.2d 1120 (Fla.1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Applying this standard of review, we conclude that the evidence presented was legally insufficient to permit a reasonable jury to find that the alleged victim was "mentally defective" on the date of the alleged sexual battery. Accordingly, the state is precluded from again trying appellant for the first-degree felony of sexual battery upon a "mentally defective" victim.

III.

Conclusion
We reverse appellant's convictions for sexual battery upon a "mentally defective" victim and a lewd, lascivious, or indecent assault or act upon or in the presence of a child, because the trial court failed to make sufficient findings before it permitted the out-of-court statements of the alleged child victim into evidence. We remand the case for retrial. On retrial, the state may not again seek to convict appellant of sexual battery upon a "mentally defective" victim, because the evidence presented at the first trial was legally insufficient to establish that the alleged victim was "mentally defective" on the date of the alleged sexual battery, and the Double Jeopardy Clause prohibits a second trial as to that offense. As to the sexual battery charge, the state is limited to attempting to prove that appellant is guilty of the second-degree felony of "[s]exual battery upon a person 12 years of age or older, without that person's consent," and without the "use [of] physical force and violence likely to cause serious personal injury," in violation of section 794.011(5), Florida Statutes (1993). In light of this disposition, we find it unnecessary to address appellant's remaining issues.
REVERSED and REMANDED, with directions.
ALLEN, J., concurs;
LAWRENCE, J., concurs and dissents with written opinion.
LAWRENCE, Judge, concurring and dissenting.
Rodney Mathis (Mathis) was convicted of sexual battery upon a mentally defective child, and lewd, lascivious or indecent assault, or act upon or in the presence of, a child. I agree that the evidence was insufficient to prove that the child victim was "mentally defective" within the meaning of section 794.011(1)(b), Florida Statutes (1993). I therefore would reduce the sexual battery offense from a first-degree to a second-degree felony. I respectfully dissent, however, from that part of the majority opinion which remands for a new trial Mathis' convictions for sexual battery upon a twelve-year-old mentally handicapped child victim, whom Mathis repeatedly sodomized, and for a lewd, lascivious or indecent assault upon the same child. I would affirm the judgments and sentences in all other respects for the following reasons.

Failure To Preserve Issues
The majority opinion only briefly addresses the question of whether the issue on appeal *182 was properly preserved in the trial court for appellate review. The record in this case reflects only two places where an objection is discussed. At the conclusion of the proffer of Officer Wright's testimony outside the presence of the jury, the court made findings pursuant to section 90.803(23), Florida Statutes (1993)(Florida Evidence Code), which the majority finds insufficient. After the announcement of those findings, the following colloquy took place:
[DEFENSE COUNSEL]: Can I just indicate I object to that and leave it to that for now
[THE COURT]: Yes. You can certainly object.
[DEFENSE COUNSEL]:until some time later?
When Officer Wright was later called as a witness, the trial judge made the following statement:
This witness was heard outside of the presence of the jury, and certain objections were made as to certain portions of the testimony, and the court would allow that to be a renewed objection. But if you have any other objections
(Emphasis added.) Defense counsel said nothing else in the record at any point concerning an objection. The trial judge's statement quoted above, "certain objections were made as to certain portions of the testimony," should put to rest any suggestion that the trial judge understood that defense counsel was objecting to the adequacy of his findings. Had an objection to findings been made, the trial judge could have addressed any alleged inadequacy now argued for the first time on appeal.
The law is clear that the failure to make adequate findings pursuant to section 90.803(23) is not fundamental error. The supreme court wrote in a unanimous opinion:
[T]he failure of a trial judge to make sufficient findings under the statute, in and of itself, does not constitute fundamental error. Hopkins; Seifert v. State, 616 So.2d 1044 (Fla. 2d DCA)(a trial court's insufficient findings under 90.803(23) do not equate with fundamental error), review granted, 626 So.2d 207 (Fla.1993); Jones v. State, 610 So.2d 105 (Fla. 3d DCA 1992)(issue of whether findings were sufficient under section 90.803(23) not preserved for review because no contemporaneous objection made to the findings), review denied, 620 So.2d 761 (Fla.1993).
State v. Townsend, 635 So.2d 949, 959 (Fla. 1994).
Since a proper objection in the trial court is necessary to preserve arguments made on appeal, it thus is necessary to examine the adequacy of counsel's statement quoted above to determine its sufficiency. The supreme court long ago addressed preservation:
Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court. State v. Jones, 377 So.2d 1163 (Fla.1979); State v. Barber, 301 So.2d 7 (Fla.1974); Silver v. State, 188 So.2d 300 (Fla.1966); Dukes v. State, 3 So.2d 754, 148 Fla. 109 (1941). Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below. Haager v. State, 83 Fla. 41, 90 So. 812, 813 (1922); Kelly v. State, 55 Fla. 51, 45 So. 990 (1908); Camp v. Hall, 39 Fla. 535, 22 So. 792 (1897); Black v. State, 367 So.2d 656 (Fla. 3d DCA 1979).
Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982). Our court holds that: "An appellate court will not consider grounds of objection to the admissibility of evidence unless they have been stated with specificity in the trial court." Jackson v. State, 456 So.2d 916, 919 (Fla. 1st DCA 1984).
It is unclear to me how the majority concludes that Mathis preserved the "findings" issue. It would appear that, at best, defense counsel merely asked the court if he could object and presumably state his grounds later. The court's reply"Yes. You can certainly object"adds nothing. It merely confirmed Mathis' right to object. In any event, defense counsel failed to state anything further with regard to preserving this issue for appeal. It is unclear to me how the majority can conclude by any reasonable standard that defense counsel objected, and further that he objected with specificity. The majority *183 relies upon Hopkins v. State, 632 So.2d 1372 (Fla.1994), to excuse Mathis from the holdings in Steinhorst and Jackson. However, in Hopkins, which reviewed the issue of whether a sufficient objection was made to findings under another statute, the supreme court said:
Hopkins' defense counsel made the following objection:
I would like to renew my previous objection objecting to this witness be[ing] allowed to testify outside of the presence of the jury and outside of the presence of Mr. Hopkins. And also object to [our] not being present to the jury to receive their reactions at the time that they view this testimony outside the presence
Under the circumstances of this case, we find that this objection properly preserved the issue for appellate review. Although the objection did not specifically address the sufficiency of the factual findings under section 92.54, it properly raised the issue of Hopkins' constitutional right "to be confronted with the witnesses against him." U.S. Const. amend. VI; see also art. I, § 16(a), Fla. Const. ("In all criminal prosecutions the accused ... shall have the right ... to confront at trial adverse witnesses....")....
....
In the instant case, defense counsel's "confrontation rights" objection necessarily called into question whether the statutory procedures had been followed.
Hopkins, 632 So.2d at 1375, 1376. In the instant case, unlike Hopkins, the purported objection by Mathis' defense counsel was totally devoid of any grounds or basis for the objection.
The majority's reliance upon In re R.L.R., 647 So.2d 251 (Fla. 1st DCA 1994), is also misplaced and cannot excuse Mathis' failure to object. In R.L.R., a juvenile dependency proceeding, defense counsel's exact language was not quoted. The R.L.R. court simply observed and concluded:
When Dr. Macyko was asked what R.R. had told her, the attorney representing the mother objected on the ground that the question sought to elicit hearsay statements of the child. During the course of the ensuing discussion, it became clear that the basis for the objection was section 90.803(23) of the Florida Evidence Code; and that all concerned, including the trial court, understood the basis for the objection. The record clearly reflects that the attorney representing appellant joined in that objection. The trial court announced that it would reserve ruling on the objection until the testimony of additional witnesses had been presented, with the understanding that, if the predicate to admissibility of R.R.'s statements was not established, the testimony regarding those statements would be stricken. Similar objections were made to testimony from Demetria Wilburn, a child protective investigator with the Department of Health and Rehabilitative Services (HRS), and Canoy Roberson, a psychotherapist. It is clear from the record that everyone, including the trial court, recognized that these objections were also being interposed on behalf of both the mother and appellant.
R.L.R., 647 So.2d at 252 (emphasis added). No such clarity regarding the basis for objection exists in the instant case. Thus R.L.R. is inapplicable here.

Harmless Error and Sufficiency of Findings
I would find that the trial judge's findings substantially complied with section 90. 803(23). Even if they did not, I would find any error harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). This is not a case where the trial judge failed to make any findings at all. The trial judge was aware of section 90.803(23), and expressly considered its requirements; he merely failed to articulate his findings to the satisfaction of the majority. The majority's insistence on a rigid and scholarly articulation ignores the conditions under which a trial judge functions. The trial judge undoubtedly, had he the luxury of a two- or three-hour recess during the jury trial to retire to his chambers and coolly consider the findings to be made, reduce them to writing, and edit them, could have articulated *184 them better. Findings however are made outside of the jury's presence; the jury is unaware of the judge's ruling in this regard. The findings, however artfully drafted, thus have no effect upon the jury's decision.
The evidence presented at the trial is sufficient to eliminate any reasonable possibility that the perceived error affected the verdict. DiGuilio. The evidence showed that the custodians of the child victim were husband and wife. The child victim was the niece of the wife and Mathis was the nephew of the husband. Mathis did not reside in the household, but came to visit his relatives on a Sunday afternoon. After dinner Mathis asked this custodian for permission to take the victim to the movies. The victim testified that Mathis "put his hand in my privacy" at the movies. After the movie was over, they rode in Mathis' truck to the airport to watch planes land and depart, but seeing no planes, they then drove to a wooded area, which the child described in detail. While at this wooded area, Mathis sodomized the child repeatedly. The child reported these events to two teachers the following day. Shortly thereafter, she accompanied Officer Wright and the two teachers in a motor vehicle and directed them to the wooded scene where the sexual crimes took place. Even Mathis in his testimony admitted that he had taken the victim to a movie, after which they went to the airport, and then later rode around in a remote area before returning to the victim's home. Semen was found in the victim's panties worn on the day of the sexual crimes. By Mathis' own testimony, the only male having access to the victim on that day, other than himself, was his uncle, a custodian of the victim. An expert testified that the person responsible for the semen in the child's panties had blood type B. Mathis was tested and determined to have blood type B. The uncle/custodian was also tested, and determined to have blood type A.
The child victim moreover testified at trial. Mathis' confrontation argument therefore is meritless. Our supreme court, in addressing the constitutionality of section 90.803(23), said: "Secondly, the child victim must either testify or be unavailable as a witness. If the child testifies, the defendant has been afforded an opportunity to confront the hearsay declarant. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)." Perez v. State, 536 So.2d 206, 209 (Fla.1988), cert. denied, 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599 (1989).
I therefore would affirm Mathis' convictions and sentences for sexual battery upon a child and for lewd assault upon a child.