WOLF, Judge.
Appellants raise two issues on appeal, one of which merits discussion: Whether in a dependency proceeding the trial court erred in not making sufficient findings of fact to support the admission of out-of-court statements of a child victim which were admitted pursuant to section 90.803, Florida Statutes. We determine that the oral statement made by the judge at the time of the admission of the evidence, coupled with the findings contained in the order of adjudication of dependency are sufficient to support admission of the out-of-court statements of the child. We, therefore, affirm.
In January 1993, three-year-old A.H. was placed in the emergency custody of his maternal aunt and uncle, following the mysterious disappearance of his mother, B.H. A proceeding to have A.H. adjudicated a dependent child was initiated, alleging that A.H. had made statements to others that his father (M.H.) had killed his mother and that the guardian now believed A.H. was “at great risk of harm for his own safety” or possibly subject to family pressure to recant the in-culpatory statements regarding the father.
At the dependency hearing, the evidence implicating M.H. in the disappearance of his wife was all circumstantial except for statements made by A.H. to Brenda Medders, a case coordinator for the child protection team, and Laura Carper, the child’s treating psychologist. The out-of-court statements indicated that the child had witnessed his father killing his mother.
Evidence presented indicated that B.H. and M.H. were having marital problems and that sometime on the night of January 6, 1993, B.H. had disappeared.' The next day, B.H.’s purse was found in a garbage dumpster near Jacksonville International Airport. The purse contained all of B.H.’s personal effects as well as over $100 worth of cash. B.H.’s Toyota Camry was found in the long-term parking lot at the airport. An undisturbed shoe print from a size 10 Nike Air Advantage was found on the left floor mat of the vehicle. The print contained sand and plant debris. A pair of size 10 Nike Advantages were later recovered during a consensual search of M.H.’s home. A botanist determined that the sand/plant debris found on the Nikes recovered from M.H.’s residence most likely came from the same source as the debris found in the Camry. No other physical evidence relevant to the disappearance was recovered.
Testimony was presented concerning Brenda Medders’ interview with the child, A.H. The interview was conducted two days after the disappearance. Appellees attempted to introduce a number of statements made by the child which indicated that A.H. had witnessed the father hurt the mother.
During Medders’ testimony, M.H. objected to the admission of the child’s statements on hearsay grounds, and asked the trial court to appoint an independent judge to conduct a hearing, pursuant to section 90.803(23), Florida Statutes (1995), to determine the reliability of the alleged statements. The trial court sustained the objection until such time as appellee could lay a complete predicate for the admission of the testimony.
The trial court heard extensive testimony as to Medders’ experience, the demeanor of the child, the way the interview was conducted, and how the statements in question were made. The trial court also heard extensive testimony on the reliability issue from Med-ders, Carper, and Harry Krop, Ph.D. (a clinical psychologist previously appointed by the trial court to conduct an evaluation of A.H.). The court also heard lengthy argument on the issue from both sides. The trial court found the statements admissible under the child victim hearsay exception based on the following findings:
I did not find that the method or circumstances in which the statement was recorded indicates a lack of trustworthiness. I would also find, and I think when I come down to it, I think as to the extent of weight to be given this and certainly, I appreciate your argument carrying over into that aspect of it, also.
I would however, find that the statement is admissible and considering the age of the *1197 child, the totality of the circumstances of the interview, interviewing techniques in relation to a three-year-old child, the closeness of the timing to the allegations— because eight months after the fact with the child this age, of course, is traumatic and we’ve all seen that in many cases even with an older child it takes a long period of time.
So anyway, I would deem that the statutory requirements have been met and, of course, the child did testify. He did not say in Court what he had said before. And that will also be considered when I determine the weight to be given the evidence presented before the Court.
All right. So I would deem the statements of the child to Ms. Medders admissible. And I guess that is enough.
The trial court also heard from Laura Carper, the psychologist who began seeing A.H. in February 1993 and saw him weekly until the time of the hearing in August 1993. Carper also testified as to interviewing techniques and the circumstances surrounding the child’s statements implicating M.H. Counsel for M.H. again objected to the admission of the statements. The trial court found the statements admissible under the child victim hearsay exception based on the following findings:
I find from the totality of the situation— I’ll go back and look at the language, though — I would not find that the source of information, or method of the circumstances of the statement to which it was reported indicates a lack of trustworthiness. And considering that the totality of the time factor, and circumstances of the statement, it would appear to be sufficient safeguards with regard to liability [sic]. I think the other advantage I have had in this case is — at least talking with [A.H.] briefly on two occasions, he is a child who impresses the Court with being — certainly has much self-confidence. He is of that age. And I think that adds to the fact that my — my finding on this. He was available and did actually testify, so I would find from the totality that those statements— statements made to Dr. Carper would be admissible.
A.H. testified twice in camera before the court. A.H. contradicted his previous testimony and denied knowing anything about anyone hurting his mother.
The court found A.H. dependent based on the physical evidence and the out-of-court statements of A.H. In the adjudicatory order, the trial court stated,
The court is persuaded by the two separate statements made by the child and introduced into evidence, the first of which was the statement made to Brenda Med-ders of the Child Protection Team on January 8, 1993 and the second of which was the statement made to Dr. Laura Carper nine months later on September 9, 1993. The court finds that the statements are internally consistent and that they comprise an eye witness account by the child, of his father shooting his mother.
The court is not concerned with the fact that during his testimony, the child made a general denial that he had seen anyone hurt his mother. The court believes this to be consistent with reports by both therapists that [A.H.] is extremely reluctant to talk about his mother, having refused to do so in approximately eleven (11) sessions with Dr. Erop and it having taken six (6) months of therapy by Dr. Carper to get him to discuss his mother. The court is impressed with the clarity, consistency and detail of the child’s two statements given nine (9) months apart in response to questions that were essentially non-leading in nature. The court places great emphasis on the opinion of Dr. Krop that it is his experience that this child is not eoachable in matters such as these and finds that these statements alone are sufficient to establish by the preponderance of the evidence that [B.H.] is missing or dead due to the acts of the father.
Section 90.803(23)(a)l, Florida Statutes, provides that an out-of-court statement of a child victim is admissible if
[t]he court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, *1198 the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate....
In Department of Health and Rehabilitative Servs, v. M.B., 701 So.2d 1155 (Fla.1997), the court determined that an out-of-court statement by a witness in a dependency proceeding which is inconsistent with the victim’s in-eourt statement is admissible if the statutory requirements are met and will support a determination of dependency in a situation where it is coupled with circumstantial evidence. The court further stated, however, that in light of the importance of these statements, strict standards must be applied prior to the admission of these statements, and the court reiterated the nonexclusive set of factors which should be considered in determining admissibility:
Beyond the factors for consideration specifically enunciated in the statute, we established the following non-exclusive list:
[A] consideration of the statement’s spontaneity; whether the statement was made at the first available opportunity following the alleged incident; whether the statement was elicited in response to questions from adults; the mental state of the child when the abuse was reported; whether the statement consisted of a child-like description of the act; whether the child used terminology unexpected of a child of similar age; the motive or lack thereof to fabricate the statement; the ability of the child to distinguish between reality and fantasy; the vagueness of the accusations; the possibility of any improper influence on the child by participants involved in a domestic dispute; and contradictions in the accusation. In sum, as noted by the United States Supreme Court in [Idaho v.] Wright, [497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)] a court is to use a totality of the circumstances evaluation in determining reliability.
Id., at 1160 (quoting State v. Townsend, 635 So.2d 949, 957-958 (Fla.1994)) (emphasis in original).
In In the Interest of R.L.R., 647 So.2d 251 (Fla. 1st DCA 1994), we had previously found that general statements concerning reliability were insufficient to support admissibility of the out-of-court statements. In Mathis v. State, 682 So.2d 175, 178-179 (Fla. 1st DCA 1996), we determined that out-oficourt statements of a victim were inadmissible where the trial court had failed to make the specific findings of reliability required by the statute and if anything, the findings which were made indicated the nonreliability of the statements. In Mathis, this court also stated that the factors supporting admissibility must be stated by the trial court, and the appellate court would not conduct an independent review of , the record to determine the reliability of the out-of-court statements. Id., at 178.
The oral statements of thé trial court in the instant ease contain the same deficiencies as those identified in R.L.R. and Mathis. The written order of adjudication, however, addresses many of the factors concerning reliability addressed by the supreme court in State v. Townsend, 635 So.2d 949, 957-958 (Fla.1994), and M.B., supra. The trial court addressed the relative period of time in which the statements were made; the clarity, consistency, and detail of the statements; and the experience of the interviewers, as well as the fact that the statements were essentially nonleading in nature. We find the trial court’s written findings sufficient to support admissibility pursuant to section 90.803(23), Florida Statutes. We also find that in the context of a nonjury case, such as a dependency hearing, the fact that the necessary findings are not made until the conclusion of the ease does not violate the principles announced in M.B., Mathis, or R.L.R. We, therefore, affirm.
JOANOS and VAN NORTWICK, JJ„ concur.