784 So.2d 591 (2001)
Jana SCHIMELE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-2866.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
*592 Kenneth G. Spillias of Lewis, Longman & Walker, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Defendant was charged with sexual battery on a mentally defective person. After a nonjury trial she was found guilty as charged.[1] On appeal she argues that there is no evidence that the victim was mentally defective. We disagree and affirm.
Before we discuss the evidence, we must first bear in mind the precise crime charged and two definitions from the sexual battery statute. The crime is found in section 794.011(4)(e), which states:
"A person who commits sexual battery upon a person 12 years of age or older without that person's consent ... commits a felony of the first degree ... when the victim is mentally defective and the offender has reason to believe this or has actual knowledge of this fact."
Section 794.011(1)(a) defines the term consent as "intelligent, knowing, and voluntary consent and does not include coerced submission." Section 794.011(1)(b) defines mentally defective as "a mental disease or defect which renders a person temporarily or permanently incapable of appraising the nature of his or her conduct."
At trial the state adduced the testimony of Dr. Ram, a psychologist who has practiced in Florida for over 50 years. Dr. Ram evaluated the victim and his family. The victim, who was 26 years at the time, was diagnosed at age 3 with cephalea and was educated solely in programs for cognitively impaired students. Dr. Ram personally interviewed the victim and immediately observed, he said, that he was "obviously mentally impaired. He looked like a retarded man; his gait, his physical appearance and, above all, his voice, [immediately signaled that he was] a retarded person." The doctor described the victim as having a very high pitched voice and childlike speech. His affect or emotional response was labilechanging from excitement to calmness, speaking quite loudly, and laughing about things not funny, with an affect that seemed unrelated *593 to or inconsistent with what he said.[2]
The victim scored 53 on the Wechsler Adult Intelligence Scale, the standard intelligence test, a score ranking in the lower part of the moderately impaired range and which is exceeded by 99.9 percent of the adult population. According to Dr. Ram, the victim has the reading ability of a 4 year old, the speaking ability of a 7-9 year old, the writing ability of a 6-7 year old (he could write his first name but nothing else), and the personal care ability of a 9-10 year old. Although the victim works three days per week for three hours per day as a bagboy at a supermarket, he has almost no mathematical ability. He cannot feed himself and cannot even understand to purchase groceries.
On cross-examination, Dr. Ram testified that the victim's understanding of sex was "pretty cloudy". While the victim had been to a topless bar where he experienced a "lap dance", and his mother had seen him watching sexually explicit movies, Dr. Ram explained that these experiences did not mean that he would understand what he was doing. Dr. Ram testified that on the date of the offenses the victim was not able to give a knowing, voluntary, intelligent consent to having sexual relations with defendant.
Defendant argues that while the testimony may have established that the victim was unable to consentconsent being a separate and distinct element of the crime of sexual battery upon a mentally defective personthe evidence of consent did not likewise establish the additional "mentally defective" element; that is, that the victim was "incapable of appraising the nature of his conduct." She adds that while Dr. Ram testified as to the victim's low IQ, relatively young development age and mental impairment, that testimony does not establish that the victim was "mentally defective" within the meaning of section 794.011(1)(b). In support she relies on Mathis v. State, 682 So.2d 175 (Fla. 1st DCA 1996).
In Mathis the state sought to prove the element of mental defectiveness through the testimony of a school psychologist who had several months before the incident administered tests "for the purpose of determining the ... victim's intelligence quotient." 682 So.2d at 180. Based on those tests, the witness testified that the victim fell at the upper end of the "trainable mentally handicapped range" and had a developmental age of 5-7. Id. Conspicuously, however, the witness was not asked whether the victim was capable of appraising the nature of her conduct. In the words of the court:
"no direct evidence whatsoever was offered on the issue of whether, on the date of the alleged sexual battery, the alleged victim was suffering from `a mental disease or defect which render[ed][her] temporarily or permanently incapable of appraising the nature of ... her conduct.'"
Id.
This omission distinguishes Mathis from the present case where Dr. Ram was asked to state an opinion on this very issue. He specifically opined that the victim's cognitive impairment, together with his limited ability to function and adapt to the world, made him incapable of understanding the nature of his conduct and its ramifications. When asked whether the victim could consent to a sexual relationship, the doctor explained:
A: Well, he could. Say he gave consent just like a 6 or a 5 year old can say *594 that he gave consent. From my perspective that's not informed consent. He can't give informed consent because he's too intellectually impaired. [e.s.]
Q: And he would not understand if he knew what he was consenting to?
A: You got it.
We do not interpret Dr. Ram's repeated use of the term "informed" to dilute or change the meaning of the statutory definition of consent that we earlier quoted. To be "intelligent, knowing, and voluntary consent and ... not include coerced submission" is the very essence of an informed consent.
Because there is substantial competent evidence in the record from which the trial judge could find that the victim had "a mental disease or defect render[ing][him] incapable of appraising the nature of his... conduct" at the time of the incident and thus that his consent could not have been "intelligent, knowing, and voluntary consent and does not include coerced submission" the sexual battery conviction must be, and hereby is
AFFIRMED.
STONE and SHAHOOD, JJ., concur.
NOTES
[1] The State charged defendant with two counts of sexual battery on a mentally defective person, one count of false imprisonment, and one count of petit theft. The trial court found her guilty of sexual battery on a mentally defective person, battery as a lesser included offense, and petit theft.
[2] From our own review of the video tape of the victim's trial testimony, Dr. Ram's assessment is supported by evidence, as is the fact that defendant should have believed that the victim was mentally defective.