BARNES, J.,
for the Court:
¶ 1. Alberto Munoz Santos was convicted of sexual battery of a mentally deficient person and sentenced to twenty-two years, with eighteen years to be served in the custody of the Mississippi Department of Corrections (MDOC), and four years suspended. He appeals his conviction and sentence, and finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the evening of February 19, 2011, Santos was visiting the home of an acquaintance, Timothy Carroll. Also at the home was Timothy’s girlfriend (now fiancee), Carol Thornton,- and her seventeen-year-old son, “Michael.”[1] The four were watching television in the master bedroom; Santos and Timothy were consuming beer. After a few hours, Timothy closed his eyes, pretending to sleep so that Santos would leave. Thornton asked Michael to escort Santos to the door. It became unusually quiet afterwards; so Timothy went to check on Michael in his bedroom. When he walked in, he saw Michael and Santos with their pants down around their knees. The two quickly pulled their pants up. Timothy, who was shocked, just told Santos to leave. Timothy called his mother to ask advice, and she told him to contact the police. He then told Thornton what had happened and called the police. Michael was taken to the hospital, where a rape kit was performed. There were traces of semen on his pants, and the DNA matched Santos.
¶ 3. Santos was indicted for sexual battery under Mississippi Code Annotated section 97-3-95(l)(b) (Rev.2006), which states: “A person is guilty of sexual bat--tery if he or she engages in sexual penetration with .... [a] mentally defective, mentally incapacitated or physically helpless person[.]” Santos was convicted in a jury trial and sentenced to twenty-two years in the custody of MDOC, with eighteen years to be served in custody and four years suspended. Finding there was sufficient evidence to support the verdict, we affirm.
DISCUSSION
Whether the circuit court erred in denying Santos’s motion for a directed verdict and motion for a new trial.
¶ 4. Although Santos argues that the State failed to prove an important element of the offense, that “[Michael] was mentally incapacitated [or] physically helpless,” his actual argument is that testimony by Michael’s teacher “failed to provide sufficient proof that [Michael] was ‘incapable of knowing the nature and quality of his conduct.’ ” Thus, Santos’s claim is that there was not sufficient evidence that Michael was “mentally deficient” under subsection (b), as there was no evidence that Michael was under the influence of an intoxicant or physically incapable of giving consent.
*343 ¶ 5. Santos was convicted of sexual battery of a mentally deficient person under section 97 — 3—95(l)(b). Mississippi Code Annotated section 97 — 3—97(b)—(d) (Rev. 2006) provides the definitions for these terms:
(b) A “mentally defective person” is one who suffers from a mental disease, defect or condition which renders that person temporarily or permanently incapable of knowing the nature and quality of his or her conduct.
(c) A “mentally incapacitated person” is one rendered incapable of knowing or controlling his or her conduct, or incapable of resisting an act due to the influence of any drug, narcotic, anesthetic, or other substance administered to that person without his or her consent.
(d) A “physically helpless person” is one who is unconscious or one who for any other reason is physically incapable of communicating an unwillingness to engage in an act.
¶ 6. As this Court has consistently stated:
A motion for a directed verdict and a motion for a judgment notwithstanding the verdict (JNOV) challenge the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). The critical inquiry is whether the evidence shows “beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.” Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). All evidence will be reviewed in the light most favorable to the State, and all credible evidence consistent with the defendant’s guilt will be accepted as true. McClain v. State, 625 So.2d 774, 778 (Miss.1993). “Reversal can only occur when evidence of one or more of the elements of the charged offense is such that ‘reasonable and fair minded jurors could only find the accused not guilty.’ ” Stewart v. State, 909 So.2d 52, 56 (¶ 16) (Miss.2005).
In contrast, a motion for a new trial challenges the weight of the evidence. Ivy v. State, 949 So.2d 748, 753 (¶ 21) (Miss.2007) (citing Sheffield v. State, 749 So.2d 123, 127 (¶ 16) (Miss.1999)). The reviewing court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The evidence will be “weighed in the light most favorable to the verdict.” Id. “Any factual disputes are properly resolved by the jury and do not mandate a new trial.” Moore v. State, 859 So.2d 379, 385 (¶26) (Miss.2003) (quoting McNeal v. State, 617 So.2d 999, 1009 (Miss.1993)).
Collins v. State, 97 So.3d 1247, 1250 (¶¶ 10-11) (Miss.Ct.App.2012) (footnote omitted). Viewing the evidence presented in the light most favorable to the State, we find there was sufficient evidence to establish all the elements of the offense. Further, we find that the verdict was not against the overwhelming weight of the evidence.
¶ 7. Shakia Robinson, Michael’s special-education teacher and former mental-health therapist, testified:
At the school currently, he is one of SCD students, which is the significantly cognitively disabled student. He’s also, as his label for special education], is EMR, educably mentally retarded. His IQ testing is below 70, which is-he has a 61 with his IQ testing.
[[Image here]]
Well, with his IQ, he’s unable to function with regular education] students. His *344 ability is like the kindergarten through third grade level with his level of functioning. As far as his social skills and daily living skills, he’s not really with his regular age group as a regular student[.]
Yet Santos states that Michael’s testimony at trial showed that he was able to understood what happened to him. When asked what Santos had done to him, Michael stated that Santos “stuck his d* *k in my butt.” He also testified that he had asked his parents to call the police, although this testimony was not supported by other evidence. Santos contends that “Timothy’s testimony shows that [Michael] wanted to avoid being caught with Santos, showing that he was not mentally defective, but rather that he understood that there was something inappropriate and wrong about what happened.”
¶ 8. Santos is correct that there are no Mississippi cases on point addressing this specific issue. To support his claim, Santos cites Mathis v. State, 682 So.2d 175 (Fla.Dist.Ct.App.1996), a case from Florida wherein the statutory definition of a “mentally defective” person is almost identical to Mississippi’s.[2] In Mathis, the district appellate court held:
[N]o direct evidence whatsoever was offered on the issue of whether, on the date of the alleged sexual battery, the alleged victim was suffering from “a mental disease or defect which rendered her temporarily or permanently incapable of appraising the nature of her conduct.” On appeal, the [S]tate argues that a reasonable juror might infer, from the alleged victim’s IQ and “mental and developmental age” some fifteen months before the date of the alleged sexual battery, that the alleged victim was “mentally defective” on the date of the alleged sexual battery. We disagree. No evidence was offered as to the correlation, if any, between IQ and “mental and developmental age,” and the ability to understand “the nature” of one’s “conduct.” Children having a chronological age younger than the alleged victim’s “mental and developmental age” have been found to possess a sufficient understanding of the difference between the truth and a lie, and the moral obligation to relate the former rather than the latter, so as to be competent to testify in court. In fact, in this case, the trial court concluded, we believe correctly, that the alleged victim was competent to testify.
On this issue, our standard of review is whether, viewing all of the evidence and inferences fairly to be drawn therefrom in a light most favorable to the [S]tate, a reasonable jury might have found that the alleged victim was “mentally defective,” as that term is defined in section 794.011(l)(b), on the date of the alleged sexual battery. The relevant focus is on the legal sufficiency, rather than the weight, of the evidence. Applying this standard of review, we conclude that the evidence presented was legally insufficient to permit a reasonable jury to find that the alleged victim was “mentally defective” on the date of the alleged sexual battery.
Mathis, 682 So.2d at 180-81 (internal citations omitted). However, subsequent Florida cases have discussed and distinguished the district court’s findings in *345 Mathis. In Bowman v. State, 760 So.2d 1053, 1055 (Fla.Dist.Ct.App.2000), the district court stated:
We do not see a problem, as the Mathis court may have, with a victim being found able to understand the moral obligation to testify truthfully, and still being mentally defective under the statutory definition. It is not unusual for a child who is actually or mentally five years old to sufficiently understand the moral obligation to tell the truth so as to be competent to testify. Telling the truth is a basic value of our society which is drummed into the heads of children as soon as they are able to reason. The fact that such a child is competent to testify, however, is not inconsistent "with being mentally defective under section 794.011(l)(b), Florida Statutes. Unlike telling the truth, the inappropriateness of the type of sexual activity occurring in Mathis or this case is not necessarily something which is normally discussed with a person who is mentally only five years old.
“As long as there is competent and substantial evidence from which the jury may conclude the victim is mentally deficient, such that she or he is incapable of ‘consent,’ the matter is a question to be resolved by the jury.” Hudson v. State, 939 So.2d 146, 148 (Fla.Dist.Ct.App.2006).
¶ 9. More recently, in State v. Dudley, 64 So.3d 746, 751-52 (Fla.Dist.Ct.App.2011), the Florida district court discussed the finding in Mathis, stating:
[W]e find the analysis in Mathis troubling in that it suggests an unreasonably narrow reading of the term “mentally deficient.” In short, Mathis equates “mental deficiency” with “legal insanity,” and further suggests that anyone with a sufficient mental capacity to competently testify in court cannot be found “mentally deficient.”
[[Image here]]
“Mentally deficient” cannot reasonably be read to mean a total lack of mental capacity, as the trial judge in our case seems to have concluded based upon language in Mathis [.] “Deficient” means “lacking in some quality” or “not up to a normal standard.” Merriam-Webster Dictionary (2011), http://www.merriam-webster.com/dictionary/deficient. It does not mean “devoid of’ or “totally lacking.” Similarly, the statutory definition of “mentally deficient,” that is, “incapable of appraising the nature of his or her conduct,” connotes significantly diminished judgment, but not a complete and total lack of mental awareness.
Accordingly, to the extent that Mathis can be read as equating “mental deficiency” with competence to testify, or to mean a total or complete lack of mental capacity or understanding, we disagree and conflict with Mathis.
The Supreme Court of Florida has granted review of the Dudley decision, which has not yet been completed. See Dudley v. State, 90 So.3d 271, 2012 WL 2848103 (Fla.2012).
¶ 10. In People v. Cox, 268 Mich.App. 440, 709 N.W.2d 152 (Mich.Ct.App.2006), the Michigan appellate court considered a case similar to the one before us. The defendant, Jeffrey Cox, was convicted of “engaging in anal and oral sex with a seventeen-year-old, mentally incapable victim.” Id. at 155-56. On appeal, Cox argued that there was insufficient evidence that the victim was mentally incapable. Id. at 156. However, there was testimony by a caseworker, a psychologist, and the victim’s counselor, that the victim was “impressionable” and “an easy child to manipulate.” Id. at 156-57. The psychologist said that although the victim “was aware of his conduct, he could not appreciate the social or moral significance of his acts re *346 lating to the homosexual encounter with [the] defendant and was incapable of making an informed decision about sexual involvement.” Id. at 157. The counselor had “a significant history of treating the victim” and testified that the victim could be “talked into doing things or following another’s lead and that he allows his personal rights to be violated to gain acceptance.” Id. The appellate court concluded that there was sufficient evidence that “the victim suffered from a mental disease or defect that rendered him incapable of appraising the nature of his conduct.” Id.
¶ 11. We agree that Michael did appear to understand that he engaged in a sexual act and that he had some appreciation that what was happening was wrong. But as the State noted, “even small children, who cannot possibly comprehend the gravity of sexual abuse will hide the conduct from parents.” Furthermore, as in Cox, Michael’s counselor and teacher, Robinson, said that although Michael was a good kid and knew right from wrong, he was the type of child who “kind of goes along with what’s going on.” She specifically noted that the other students would tease him, but he was often unaware that they were making fun of him. Rather, she said he just thought “that he’s part of the crowd.” Timothy also testified that Michael was “easily intimidated or scared.” Michael testified that he was afraid of Santos; yet he also contradictorily stated that Santos was his friend.
¶ 12. Thus, we find there was sufficient evidence presented at the trial from which a jury could find beyond a reasonable doubt that Michael suffered from a mental deficiency. Moreover, the testimony sufficiently showed that Michael’s mental age was that of a young child. Robinson said that Michael functioned at a grade-school level. At the trial, Michael was confused about the court’s instruction to “swear to tell the truth,” testifying that it meant a person should “honor the judge.” When asked if he knew what happens when you do not tell the truth, Michael responded that you get “struck” by God. Michael’s “word choices and phraseology throughout the testimony reflect the mental ability of a young child.” See Dudley, 64 So.3d at 748.
¶ 13. Accordingly, we affirm the judgment of the circuit court.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-TWO YEARS, WITH EIGHTEEN YEARS TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FOUR YEARS TO BE SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J„ NOT PARTICIPATING.

. A fictitious name is being used to protect the identity of the victim of sexual assault.

. Compare Fla. Stat. § 794.011(b) (Rev.2002) (“ ‘Mentally defective’ means a mental disease or defect which renders a person temporarily or permanently incapable of appraising the nature of his or her conduct.”) with Miss. Code Ann. § 97-3-97(b) ("A 'mentally defective person' is one who suffers from a mental disease, defect or condition which renders that person temporarily or permanently incapable of knowing the nature and quality of his or her conduct.”).