[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13–11034
Non-Argument Calendar
_____

D.C. Docket No. 3:09–cv–01174–MMH–JRK


ENOCH E. DINKENS, JR.,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 19, 2014)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Enoch Dinkens is currently serving a life sentence for sexual battery on a "mentally defective" woman in violation of Fla. Stat. § 794.011.  After the Middle District of Florida denied his second amended habeas corpus petition pursuant to 28 U.S.C. § 2254, this Court granted Dinkens a certificate of appealability (COA). The COA was limited to the question of whether the district court erred in denying Dinkens's motion for a judgment of acquittal because the State failed to prove that the victim was "mentally defective" on the date of the incident and his appellate counsel was ineffective for not raising the argument that the trial court erred in doing so.  After careful review, we affirm.

## I.

When the mother of the victim testified at trial in April 2007, her daughter J.W. was eighteen years old.  At the age of two, J.W. began having seizures that continued to the present and had stunted her mental development.  J.W. cannot perform simple tasks:  she is unable to brush her hair, tie her shoes, or bathe herself, and she wears adult diapers because she has no control of her bowels. Similarly, she can only count to ten, cannot read, and cannot tell right from left.

On September 17, 2006, J.W. was left by her mother with two cousins while she went shopping.  When the mother returned she saw Dinkens, who was not at the house when she left, standing near one of the bedrooms, and then saw J.W. come out of one of the rooms.  Dinkens was a distant relative who had known J.W.

since she was a child.  Previously, Dinkens had been around J.W., observed her behavior, and been unable to have a conversation with her because of her mental difficulties.  Later, speaking with police, Dinkens stated that he had followed J.W. into the bedroom and had sex with her.  When Dinkens heard J.W.'s mother pull up to the home, he hurried to put J.W.'s pants on.  J.W.'s mother asked Dinkens what he had been doing, he told her, "and then [J.W.] told them I had done it to her."  Dinkens admitted to the police that "he knew that [J.W.] was mentally handicapped, which was what was—had been eating him up since it occurred."

At trial, Dr. Alan Harris testified as an expert in the area of psychology.  He met with J.W. on January 18, 2007.  After administering an intelligence test, Harris found that J.W.'s IQ placed her between moderately and severely retarded.  He concluded that she functioned at about the level of a three year old.  Based on Harris's evaluation, he believed that J.W. would not be able to give a knowing, voluntary, and intelligent consent to intercourse.

Through counsel, Dinkens moved for a judgment of acquittal based on the State's failure to prove that (1) he had actual knowledge or reason to believe that J.W. was "mentally defective" and (2) J.W. was "mentally defective" at the time of the incident.  He asserted that the testimony as to J.W.'s mental disability only related to the time of testing by Harris, not the date of the incident.  The court denied the motion for judgment of acquittal, and the jury found Dinkens guilty.

3

The court sentenced Dinkens to life imprisonment because he was a habitual offender.

Through different counsel, Dinkens unsuccessfully appealed his conviction and sentence, but did not raise the argument that the trial court erred in denying his motion for a judgment of acquittal. Next proceeding pro se, Dinkens filed a petition for a writ of habeas corpus, arguing, in relevant part, that his appellate counsel was ineffective for not arguing that the trial court erred in denying his motion for a judgment of acquittal. The First District Court of Appeal issued a per curiam opinion denying Dinkens's petition, stating, "[t]he petition alleging ineffective assistance of appellate counsel is denied on the merits."

## II.

We review de novo a district court's denial of a habeas petition and review its factual findings for clear error. Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998). A habeas petition based on ineffective assistance of counsel presents a mixed question of law and fact that we review de novo. Id.

We may not grant habeas relief on claims that were adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

4

proceeding." 28 U.S.C. § 2254(d). A state court's summary adjudication of a petitioner's claim without an accompanying statement of reasons is an adjudication on the merits and is entitled to deference. Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court set out the now familiar two-part inquiry for ineffective assistance of counsel claims that examines both performance and prejudice. Id. at 687, 104 S. Ct. at 2064. To establish deficient performance, the petitioner must show his counsel's performance was objectively unreasonable in light of prevailing professional norms at the time the representation occurred. Id. at 687–88, 104 S. Ct. at 2064–65. In assessing an appellate attorney's performance, we are mindful that the Sixth Amendment does not require counsel to raise non-frivolous issues. Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In order to establish prejudice based on counsel's failure to raise a claim on appeal, we must review the merits of the omitted claim. See Heath, 941 F.2d at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." Id.

5

The standard of review is "doubly deferential" when "a Strickland claim [is] evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Id. (quotation marks omitted).

## III.

"We start, as always, with the language of the statute." Schwarz v. City of Treasure Island, 544 F.3d 1201, 1214 (11th Cir. 2008). Under Florida law, a person is "mentally defective" if she has a "mental disease or defect which renders [her] temporarily or permanently incapable of appraising the nature of . . . her conduct." Fla. Stat. § 794.011(1)(b). It is a first degree felony for a person to commit sexual battery upon a "mentally defective" person who is 12 years of age or older when the offender knows or has reason to believe that the victim is "mentally defective." Id. § 794.011(4)(e).

When granting Dinkens's COA, we cited the case of Mathis v. State, 682 So. 2d 175 (Fla. 1st DCA 1996). Mathis is instructive on the issue of how Dinkens's sufficiency of the evidence claim would have been treated had his appellate counsel raised the issue on direct appeal. In that circumstance, the state appellate court would have determined "whether, viewing all of the evidence and inferences

6

fairly to be drawn therefrom in a light most favorable to the state, a reasonable jury might have found that the alleged victim was 'mentally defective,' as that term is defined in [Fla. Stat.] section 794.011(1)(b), on the date of the alleged sexual battery." Id. at 181.

In Mathis, Florida's First District Court of Appeal considered whether the evidence presented at trial was legally sufficient to establish that the purported victim was "mentally defective" at the time of the offense. Id. at 180–81. To establish that the alleged victim was "mentally defective," the State presented the testimony of a school psychologist. Id. at 180. The psychologist testified that she had administered tests to the victim 15 months before the date of the alleged sexual battery in order to determine the victim's IQ. Based on those test results, she determined that the victim was at the upper end of the "trainable mentally handicapped range" and that the victim's developmental age was between five and seven years old. Id. The psychologist was never "asked whether, on the date of the alleged sexual battery, the alleged victim was suffering from a mental disease or defect which rendered her temporarily or permanently incapable of appraising the nature of her conduct." Id. (quotation marks and alterations omitted). The court noted that "no direct evidence whatsoever was offered on th[at] issue." Id. The court rejected the State's argument that a reasonable juror could infer from the alleged victim's IQ and mental development age 15 months prior to alleged sexual

7

battery that the victim was "mentally defective" on the date of the charged incident. Id. The court rejected this argument because the State had offered no evidence of any correlation "between IQ and 'mental and developmental age,' and the ability to understand 'the nature' of one's 'conduct.'" Id. at 180–81.

Applying the doubly deferential standard of review to Dinkens's § 2254 petition, the state court's denial of Dinkens's ineffective assistance of appellate counsel claim was not unreasonable. See Knowles, 556 U.S. at 123, 129 S. Ct. at 1420. In light of Mathis, a reasonable attorney may have chosen to argue that the trial court erred in denying a judgment of acquittal on the grounds that the evidence was legally insufficient to show that the alleged victim was "mentally defective" at the time of the offense. However, based on the factual distinctions between Dinkens's case and Mathis, the state court's implicit finding that counsel's performance was not deficient is not unreasonable.

In Mathis, the State sought to establish that the victim was "mentally defective" through the testimony of the school psychologist who examined the victim 15 months prior to the sexual battery. 682 So.2d at 180. In Dinkens's case, the State presented significantly more evidence to establish that J.W. was "mentally defective" on the date of the offense, or at least reasonable inferences to be drawn from them. See id. at 181. The State presented the testimony of both Harris, a psychologist who examined J.W. four months after the incident, and

8

J.W.'s mother.  While Harris testified on cross-examination that he did not ask J.W. any questions to determine her mental state on the date of the alleged sexual battery, J.W.'s mother testified about J.W.'s mental capacity at the time of the incident.  Also, Harris testified that J.W. had a previous diagnosis of moderate mental retardation.  Additionally, the detective investigating the case testified that he was unable to communicate with J.W. despite efforts to do so.

Therefore, unlike in Mathis, there was evidence from which the jury could infer that the victim was "mentally defective" at the time of the crime.  The jury did not have to rely solely on making inferences from expert testimony regarding IQ and developmental age, which were held to be insufficient in Mathis.  As a result, Dinkens has not established that the state court's determination that his appellate counsel's performance was not deficient was contrary to or involved an unreasonable application of clearly established federal law.  While it is conceivable that a Mathis-based appeal would have been successful, a reasonable jurist could conclude that Dinkens did not show a reasonable likelihood of success had his appellate counsel raised the claim on direct appeal.

**IV.**

Dinkens has not shown that the state court's denial of his ineffective assistance of counsel claim was contrary to, or an unreasonable application of,

9

<u>Strickland</u>. Therefore, federal habeas relief is foreclosed. <u>See</u> 28 U.S.C. § 2254(d). We affirm the district court's denial of Dinkens's § 2254 petition.

**AFFIRMED.**