United States Court of Appeals,

Eleventh Circuit.

No. 97-3355.

Terry Melvin SIMS, Petitioner-Appellee, Cross-Appellant,

v.

Harry K. SINGLETARY, Jr., Secretary, Florida Department of Corrections, Respondent-Appellant, Cross-Appellee.

Sept. 22, 1998.

Appeals from the United States District Court for the Middle District of Florida. (No. 93-1055-CIV-ORL-22), Anne C. Conway, Judge.

Before DUBINA, CARNES and HULL, Circuit Judges.

DUBINA, Circuit Judge:

The State of Florida ("the State") appeals the district court's judgment granting in part Terry Melvin Sims's ("Sims") petition for federal habeas corpus relief as to his death sentence. Sims cross-appeals the district court's judgment denying his claims challenging the validity of his conviction. After reviewing the entire record in this case, and having the benefit of oral argument and the parties's briefs, we affirm the district court's judgment denying habeas relief as to Sims's guilt stage issues, but we reverse the district court's judgment granting habeas relief as to Sims's sentencing stage issues.

I. BACKGROUND

A. *FACTS*

The facts are recited verbatim from the Florida Supreme Court's opinion on direct review of Sims's conviction and sentence.

Terry Melvin Sims was convicted for the first-degree murder of George Pfeil, an off-duty deputy sheriff who entered a pharmacy while it was being robbed by Sims and three other

men.  Two of these other participants, Curtis Baldree and B.B. Halsell, were the state's chief witnesses.  They testified that Sims and Baldree armed themselves with pistols and entered the pharmacy, while Halsell and the fourth participant, Gene Robinson, waited in a car a short distance away.  Baldree said that he went to the back of the store to rob the pharmacist while Sims stayed at the front of the store watching the door.  Sims ordered the customers and employees to the back of the store and into the bathroom.  While Pfeil came into the store he and Sims exchanged gunfire.  Pfeil was shot twice and Sims was wounded in the hip.  Sims and Baldree escaped the scene and later joined their accomplices.  The four men then departed the area.

This account of the robbery and the shooting was confirmed by pharmacist Robert Duncan, Duncan's wife and daughter both of whom worked at the store, and two customers who identified appellant.  One of the customers, William Guggenheim, testified that he tried to leave the store when he saw a man pointing a gun at the pharmacist.  He was stopped by Sims who took his wallet.  Guggenheim said he then saw Sims shoot a man who was entering through the front door.

The main theory of defense was mistaken identity.  The defense attempted to discredit Baldree and Halsell on the basis of their bad character, drug addiction, criminal records, and the plea arrangements between them and the state.  The defense attacked the identification testimony of one of the customers as the product of a suggestive photographic line-up and questioned the testimony of Guggenheim on the basis of his earlier failure to choose appellant from a photographic line-up.  The defense then presented evidence of appellant's resemblance to another individual said to be a frequent criminal associate of Baldree and Halsell.

The jury returned verdicts of guilty of first-degree murder and robbery.  At the sentencing phase, the state presented a certified copy of a 1971 Orange County conviction for assault with intent to rob.  The defense presented witnesses who testified to appellant's good character and difficult background circumstances.  The jury recommended death.  Finding several aggravating circumstances and no mitigating circumstances, the trial judge adopted this recommendation.

*Sims v. State,* 444 So.2d 922, 923-24 (Fla.1983).

B. *PROCEDURAL HISTORY*

Sims's conviction and sentence were affirmed on direct appeal.  *Sims v. State,* 444 So.2d 922 (Fla.1983).  Sims raised numerous issues on direct appeal:  (1) whether he was denied his Sixth Amendment right to cross-examine a witness when the trial court curtailed defense counsel's cross-examination of Baldree;  (2) whether the trial court erred in denying his motion for mistrial

when a witness mentioned using Sims's "mug shot" in a photographic display;  (3) whether the trial court erred in excluding from evidence documents corroborative of a defense witness's testimony;  (4) whether the prosecutor made several improper comments during his closing argument;  (5) whether the trial court erred by not granting his request for an evidentiary hearing on whether the exclusion of potential jurors unalterably opposed to the death penalty results in a jury predisposed toward conviction;  (6) whether Sims was improperly prevented from further questioning a juror in a post-trial hearing about whether the jurors had considered Sims's failure to testify in reaching their verdict;  (7) whether the trial court erred in allowing the jury to return verdicts on multiple and inconsistent counts;  and (8) whether the trial court properly imposed a sentence of death.  The Florida Supreme Court found no merit to issues one, two, three, five, six, and seven.  444 So.2d at 923-24.  The court found issue four to be procedurally barred because counsel failed to object at trial to the prosecutor's alleged improper comments.  Therefore, the issue was not preserved for appeal. *See State v. Cumbie,* 380 So.2d 1031, 1033 (Fla.1980).

With respect to the sentencing issues, the Florida Supreme Court determined that two aggravating circumstances were improperly "double-counted" and that the aggravating factor that the murder was heinous, atrocious, or cruel was improper, but harmless.  444 So.2d at 926.  Despite these errors, and in light of no mitigating circumstances, the court found that the death sentence was nonetheless appropriate.  The court found three aggravating circumstances valid:  that the capital felony was committed in the course of a robbery, that it was committed for the purpose of avoiding arrest, and that Sims had previously been convicted of life-threatening crimes. *Id.* Thus, "[w]here there are some aggravating and no mitigating circumstances, death is presumed to be the appropriate punishment." *Id.*

3

Sims filed a petition for habeas relief in the state court and later voluntarily dismissed that petition. Sims then filed a motion to vacate the judgment and sentence and a motion for collateral relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court addressed both motions in its order. R.Vol. 12, Tab 7. Sims challenged his conviction and sentence raising numerous issues: (1) whether his attorneys provided ineffective counsel at the guilt stage proceedings because they failed (a) to explain why further cross-examination of witness Baldree was necessary, (b) to challenge the alleged misidentification of Sims by witness Sue Kovec due to her hypnosis, (c) to object to improper closing argument by the prosecutor, and (d) to object to and request a hearing on the necessity of numerous security measures employed at trial; (2) whether the prosecutor knowingly used perjured testimony regarding the full extent of the bargain Halsell received from the State for his testimony; (3) whether Sims's attorneys were ineffective at the penalty phase because their guilt stage errors affected their performance at sentencing and because they failed to object to the prosecutor's attempts to develop sympathy for the victim; (4) whether the death sentence is unconstitutional because no court found that Sims had the specific intent to cause the victim's death; (5) whether the death penalty is imposed in an arbitrary and discriminatory manner; (6) whether the death sentence is unreliable because the court told the jury that the sentencing decision was not their sole responsibility; (7) whether Sims's attorneys were ineffective for failing to attack the photo line-up the witnesses saw; (8) whether Sims's attorneys were ineffective for failing to adequately investigate and present additional evidence supporting the defense theory that Terry Wayne Gayle, not Sims, was the fourth participant in the robbery; (9) whether the State withheld exculpatory evidence (receipt of lock pullers bearing Gayle's signature); (10) whether

4

there was *Hitchcock*[1] error; (11) whether Sims was prevented from showing evidence of sentencing disparity between himself and his co-participants; (12) whether the prosecutor improperly used victim impact evidence; (13) whether counsel failed to investigate, develop, and present additional evidence of mitigation; (14) whether there was a failure to investigate the prior violent felonies and present available evidence to mitigate or exclude them; and (15) whether the trial court erred in failing to adequately inform the jury of the impact of its recommendation. After conducting an evidentiary hearing on Sims's motions for post-conviction relief, the trial court denied relief. The Florida Supreme Court affirmed the trial court's judgment. *Sims v. State,* 602 So.2d 1253 (Fla.1992).

Sims next filed a state petition for writ of habeas corpus in the Florida Supreme Court.[2] The Florida Supreme Court denied relief, finding all claims procedurally barred except for the ineffective assistance of appellate counsel claim, which the court denied on the merits. *Sims v. Singletary,* 622 So.2d 980, 981 (Fla.1993).

Sims then filed a petition for writ of habeas corpus relief under 28 U.S.C. § 2254 in the federal district court. The district court issued an order denying Sims's petition for habeas relief as

---

[1]*Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (a death sentence may be unconstitutional if the trial judge instructs the advisory jury not to consider, and the trial judge himself refuses to consider, evidence of non-statutory mitigating circumstances).

[2]Sims's state habeas petition contained the following claims: (1) whether Sims was denied a complete appellate review of his conviction and sentence in his direct appeal; (2) whether the penalty phase jury was permitted to weigh invalid or impermissibly vague aggravating factors; (3) whether the Florida Supreme Court applied an automatic affirmance of his sentence; (4) whether the trial court erred in repeatedly chastising defense counsel in the jury's presence; (5) whether Sims was denied his right to be present during portions of his trial; (6) whether the trial court erred in failing to instruct the jury to return a special verdict indicating whether it was convicting Sims of felony murder or premeditated murder; (7) whether Sims was denied his right to a reliable and nonarbitrary sentencing determination; and (8) whether Sims's appellate counsel was ineffective.

5

to his conviction, but granting it as to his death sentence. For the reasons that follow, we affirm the district court's judgment denying habeas relief on Sims's guilt stage claims but reverse the judgment insofar as it grants habeas relief on Sims's penalty stage claims.

## II. STANDARD OF REVIEW

The district court's grant or denial of habeas corpus relief is reviewed *de novo.  Byrd v. Hasty,* 142 F.3d 1395, 1396 (11th Cir.1998). "A district court's factual findings in a habeas corpus proceeding are reviewed for clear error." *Id.* An ineffective assistance of counsel claim is a mixed question of law and fact which we review *de novo.  Dobbs v. Turpin,* 142 F.3d 1383, 1386 (11th Cir.1998).

## III. ISSUES

1. Whether Sims's attorneys were ineffective for the following reasons:

a. failure to challenge the "suggestive identification procedures;"

b. failure to object to the use of hypnotically-induced testimony;

c. failure to object to the use of shackles on the defendant;

d. failure to adequately confront and cross-examine Baldree;

e. failure to object to improper prosecutorial comment;  and

f. counsel's commission of numerous omissions and errors that undermined confidence in the verdict.

2. Whether Sims's constitutional rights were violated when unreliable hypnotically enhanced testimony was used against him.

3. Whether the trial court unconstitutionally curtailed defense counsel's cross-examination of witness Curtis Baldree.

6

4. Whether the prosecution failed to reveal the actual terms of the plea agreement extended to James "B.B." Halsell in exchange for his testimony.[3]

5. Whether the prosecution withheld exculpatory documentary and testimonial evidence.

6. Whether there was prosecutorial misconduct during closing argument at the penalty stage.

7. Whether the trial court erred when it denied Sims's request for an evidentiary hearing to determine the "prosecution-proneness" of the jury empaneled in his case.

8. Whether Sims was denied a fair trial because the trial court denied a motion for mistrial based on a witness's reference to Sims's "mug shot" during trial.

9. Whether Sims's federal rights were violated when the trial court ended post-trial inquiry of a juror and denied Sims's motion for a new trial.

10. Whether the trial court erred in permitting the jury to return general verdicts on allegedly multiple and inconsistent counts of first degree murder.

11. Whether Sims received ineffective assistance of appellate counsel on direct appeal.

12. Whether Sims was denied the right to present a defense and have a fair trial because of the trial court's exclusion of three documents.

13. Whether errors during the guilt phase require vacating Sims's death sentence.

14. Whether there was constitutional error with regard to Sims's sentencing due to a *Hitchcock* violation.

IV. DISCUSSION

A. *Guilt Stage Issues*

---

[3]The district court framed this argument in terms of a violation of *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

7

1. *Ineffective Assistance of Counsel at the Guilt-Stage*

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland,*

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "When applying *Strickland,* we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary,* 141 F.3d 1018, 1023 (11th Cir.1998).

The various claims of ineffective assistance of counsel asserted by Sims are as follows:

(a) Sims claims that his attorneys provided ineffective counsel by failing to challenge the suggestive identification procedures at trial. Sims complains that a photographic line-up and media coverage interfered with the in-court identification of him by witnesses Sue Kovec ("Kovec"), William Guggenheim ("Guggenheim"), and Colleen Duncan ("Colleen"). The record discloses that Sims's counsel filed a pre-trial motion to suppress the suggestive identification procedures. R. Vol. 5, p. 958, 968; Vol. 7, pp. 1165-1211; Vol. 14, pp. 220, 300.[4] The trial court conducted an evidentiary hearing and denied the motion. R. Vol. 5, p. 972. There is nothing in the record to

---

[4]The record of Sims's trial and post-conviction hearing will be designated as "R. Vol. ___." The record on appeal, consisting of the district court's order, will be designated as "ROA, Vol. ___."

suggest that the photographic line-up was suggestive. Detective Ralph Salerno ("Salerno") testified that he showed the photographic line-up to the witnesses. R. Vol. 7, p. 1174; Vol. 14, p. 645. Robert Duncan ("Duncan"), the pharmacist, was unable to identify anyone; Guggenheim identified Baldree; and Kovec identified Baldree and Sims. Salerno showed the line-up to these witnesses because they had all indicated that they would be able to identify the perpetrators again. The fact that Kovec was the only witness to identify Sims indicates that the photographic line-up was not suggestive. Additionally, defense counsel cross-examined all of the witnesses regarding their in-court identification of Sims. Accordingly, their failure to object *at trial* to the alleged suggestiveness of the photographic line-up cannot be deemed legally deficient.

(b) Sims argues that his lawyers provided ineffective counsel by failing to object to the use of hypnotically-enhanced testimony. Specifically, Sims claims that counsel should have (1) thoroughly cross-examined the witnesses at trial regarding their hypnosis sessions and (2) argued that the testimony of the hypnotically refreshed witnesses should have been excluded under state law in effect at the time this case was tried in 1978. Both arguments center around the testimony of Duncan, Guggenheim, and Kovec, who were subjected to hypnosis a few days after the crime. The hypnotist, Bruce Drazen ("Drazen"), had been conducting hypnotic sessions for the police department for several years, although he had no formal educational training in hypnosis. R. Vol. 13, pp. 34-36. Drazen had not read the statements of the witnesses and had no knowledge of what the suspects looked like. *Id.* at 48. The main thrust of his hypnosis sessions was to develop better details of the perpetrators. *Id.* at 50. Either during or immediately after the hypnosis sessions, the witnesses talked to a police artist who attempted to draw pictures reflecting the characteristics of the alleged perpetrators. *Id.* at 59.

9

The record indicates that Sims's counsel did file a pre-trial motion to strike the introduction of the hypnotically refreshed testimony, but apparently did not follow up on that motion. During the trial, counsel did not cross-examine the witnesses about their hypnosis sessions. At Sims's Rule 3.850 hearing, one of Sims's lawyers, Bill Heffernan ("Heffernan"), stated that he did not research the question of whether hypnotically refreshed testimony was admissible. Sims's other lawyer, Mark Rabinowitz ("Rabinowitz"), testified that he did conduct research on the subject and concluded that the testimony was admissible. In its ruling on Sims's Rule 3.850 motion, the trial court noted that the use of hypnotically refreshed testimony was permitted at the time of Sims's trial, although it was later discredited in *Bundy v. State,* 471 So.2d 9 (Fla.1985), and determined to be inadmissible. Thus, counsel could not be held ineffective for failing to object to testimony that was admissible at the time of Sims's trial. Additionally, Sims's counsel determined that the witnesses's credibility could be attacked by other means. The trial court found that "[t]his decision falls within the wide range of professionally competent assistance that counsel must make in every trial. Furthermore, counsel is not required to anticipate changes in the law resulting from subsequent court decisions." R. Vol. 12, Tab 7, p. 5.

On appeal, the Florida Supreme Court affirmed the trial court's ruling, noting that in 1978, "it was evident that forensic hypnosis was often employed." 602 So.2d at 1256. The court further found that even if counsel had been ineffective, Sims was not prejudiced within the meaning of *Strickland.* First, Drazen did not know what the perpetrators looked like, so his questions could not have been suggestive. Second, the State presented the testimony of Sims's two accomplices who identified Sims as the triggerman so that the hypnotically refreshed testimony was not the only evidence on this point. Moreover, even if the *Bundy* analysis had been available at the time of

10

Sims's trial, much of the hypnotized witnesses's testimony would still have been admissible. 602 So.2d at 1256. *See Stringer v. Black,* 503 U.S. 222, 235, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)(federal courts will not challenge a state court's determination of state law).

Under the circumstances of the case, we cannot find that counsel's performance fell outside the range of reasonably competent assistance. Counsel's testimony at the Rule 3.850 hearing supports a reasonable interpretation that there was a strategic decision on counsel's part not to attempt to mount an attack on the unreliability of hypnotically refreshed testimony. R. Vol. 13, pp. 147-57; Vol. 14, pp. 303-08. Sims's attorneys felt confident that they could attack the reliability of the witnesses's identification on cross-examination. Accordingly, under our precedents dealing with tactical choice by counsel, we conclude there was no deficient performance. *See e.g. Davis v. Singletary,* 119 F.3d 1471, 1477 (11th Cir.1997)(attorney's failure to attempt to impeach a witness on grounds that the witness had been hypnotized was reasonable, tactical decision because bringing to the jury's attention the fact that a prosecution witness had been hypnotized would have run the risk of bolstering that witness's testimony in the eyes of the jury), *cert. denied,* --- U.S. ----, 118 S.Ct. 1848, 140 L.Ed.2d 1097 (1998); *Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11th Cir.1994)(counsel made a strategic decision to keep from the jury the fact of the hypnosis). *See also Thompson v. Nagle,* 118 F.3d 1442, 1452 (11th Cir.1997)(defense counsel's decision to present a mental health defense based on the testimony of the defendant's father and one mental health expert was strategic choice since this strategy would prevent the admission of damaging testimony at trial), *cert. denied,* --- U.S. ----, 118 S.Ct. 1071, 140 L.Ed.2d 130 (1998); *Lambrix v. Singletary,* 72 F.3d 1500, 1504-05 (11th Cir.1996)(counsel's decision not to present a wealth of evidence of chemical dependency was a tactical choice since counsel determined that such evidence would be detrimental

rather than beneficial in the sentencing phase), *aff'd,* 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Mills v. Singletary,* 63 F.3d 999, 1024-26 (11th Cir.1995)(counsel's decision to curtail further investigation into co-defendant's psychiatric treatment comported with trial strategy and counsel's decision not to present additional mitigating evidence was reasonable), *cert. denied,* 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996). In sum, we agree with the state courts that this strategic decision was not one of those relatively rare strategic decisions that is outside the wide range of reasonable professional assistance.[5]

Sims also argues that his counsel should have been aware of two recent decisions of the Florida District Court of Appeals, Third District, which held that hypnotically refreshed testimony was inadmissible. *See Rodriguez v. State,* 327 So.2d 903, 904 (Fla. 3rd Dist.Ct.App.1976); *Shockey v. State,* 338 So.2d 33, 37 (Fla. 3rd Dist.Ct.App.1976). He contends that the trial court and counsel were bound by these opinions although the trial court was not in the third district court of appeals. Even if the trial court were bound by these decisions, they are distinguishable. In *Rodriguez,* the court addressed the sole question of whether the trial court erred by prohibiting the admission of statements made by the defendant under hypnosis. This is materially different from the hypnotically refreshed testimony of witnesses used in Sims's case. The *Rodriguez* court found no abuse by the trial court in disallowing the hypnotically induced statements of the defendant, but noted that it "remains unconvinced of the reliability of statements procured by way of hypnosis." 327 So.2d at

---

[5]The district court determined that counsel did not perform reasonably in addressing the use of hypnotically enhanced testimony; however, the court concluded that Sims could show no prejudice from counsel's deficient performance. Thus, under *Strickland,* Sims's claim of ineffectiveness did not merit relief. As noted *infra,* however, the district court found that counsel's inadequate performance in failing to address the use of hypnotically enhanced testimony, along with other factors, precluded a finding of harmlessness on the *Hitchcock* claim and warranted habeas relief as to the sentence of death.

904. This is not a definitive statement regarding the admissibility of hypnotically refreshed testimony such that counsel would have known that hypnotically refreshed testimony was not admissible in this case. Additionally, in *Shockey,* the defendant filed a motion for new trial relying upon evidence from his accomplice's hypnotic session which tended to corroborate the defendant's version of the crime. The court found that the trial court properly denied the motion because the hypnotically induced testimony was not admissible. 338 So.2d at 37. Again, the *Shockey* decision is not a definitive statement regarding the use of hypnotically refreshed testimony such that Sims's counsel should have known it was admissible in his case.

As the Florida Supreme Court noted on appeal of Sims's denial of post-conviction relief, the use of forensic hypnosis was admissible at the time of Sims's trial. "It was not until seven years later that this Court held that hypnotically obtained testimony was inadmissible." 602 So.2d at 1256 (citing *Bundy v. State,* 471 So.2d 9 (Fla.1985)). If the *Rodriguez* and *Shockey* decisions had been binding on the trial court, the Florida Supreme Court would have indicated that in its opinion, but it did not. We will not challenge a state court's determination of state law. *See Stringer v. Black,* 503 U.S. 222, 235, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)("It would be a strange rule of federalism that ignores the view of the highest court of a State as to the meaning of its own law."); *Parker v. Dugger,* 498 U.S. 308, 327, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991)(White, J., dissenting)("It is axiomatic that ... the views of the State's highest court with respect to state law are binding on the federal courts.") (citations and quotation omitted); *Cargill v. Turpin,* 120 F.3d 1366, 1381 (11th Cir.1997)("We are not at liberty to challenge this state court determination of state law."), *cert. denied,* --- U.S. ----, 118 S.Ct. 1529, 140 L.Ed.2d 680 (1998).

13

Accordingly, we are not persuaded that Sims's attorneys were ineffective by failing to object to the use of hypnotically refreshed testimony since the law at the time of Sims's trial supported the admissibility of such testimony. Assuming *arguendo* that Sims's attorneys were ineffective based on this failure to object, Sims has shown no prejudice within the meaning of *Strickland*. As previously noted, Drazen did not know what the killer looked like when he conducted the hypnosis sessions, so his questions were not suggestive. Further, assuming that none of the hypnotized witnesses testified, the State presented the testimony of Sims's accomplices who identified Sims as the triggerman. Sims cannot demonstrate that a reasonable possibility exists that the result of the proceedings would have been different. He is entitled to no relief on this claim of ineffectiveness.

(c) Sims claims that his attorneys were ineffective due to their failure to object when Sims was brought into court wearing shackles or to object to the extra security measures in place during his trial. At Sims's Rule 3.850 hearing Heffernan testified that he did object to the shackles and that the trial court ordered them removed. R. Vol. 13, p. 146. One of the prosecutors testified that Sims was shackled at the start of trial, but he thought Sims was brought in and seated before the jury entered the courtroom. R. Vol. 14, pp. 268-70. Rabinowitz stated that Sims came into the courtroom in shackles and Bill [Heffernan] objected, but the trial court denied the motion. Rabinowitz further stated that "[w]e were placed in a position that if we stood up,—started asking the jury, we would be responsible for poisoning the venire." R. Vol. 14, p. 312.

The record belies Sims's claim that counsel failed to object to the use of shackles. It was clear that counsel did object and then made a strategic decision not to call attention to the shackles. There is no merit to this claim.

Sims also argues that counsel should have objected to the extra security measures in place during his trial. At the post-conviction hearing, Heffernan commented that security was very tight, but he made no mention of how this affected his representation of Sims. R. Vol. 13, p. 144. In light of Sims's failure to show how this prejudiced his right to a fair trial, he is entitled to no relief on this claim.

(d) Sims argues that counsel failed to confront adequately and cross-examine one of the State's key witnesses, Curtis Baldree. The substantive component of this claim was presented on direct appeal and decided adversely to *Sims*. 444 So.2d at 924. Sims did not raise this specific claim as one of ineffective assistance of counsel in his post-conviction proceeding. Therefore, the claim is procedurally defaulted for our purpose, and the district court erred in considering the claim on the merits. *See Footman v. Singletary,* 978 F.2d 1207, 1211 (11th Cir.1992).[6]

(e) Sims argues that his lawyers were ineffective for failing to object to improper prosecutorial comment and argument and improper judicial instruction. During the course of the trial, the trial judge corrected Sims's counsel twice during voir dire, admonished counsel several times during opening argument, and advised counsel to "move on" during cross-examination of two witnesses. These admonitions by the trial court were done to correct misstatements of counsel. When Sims's counsel objected, the court similarly corrected the prosecutor. R. Vol. 1, p. 93. Sims also claims that the trial court improperly instructed defense counsel to discuss only the evidence. Three of the four rulings by the trial court were in response to appropriate objections by the prosecutor. R. Vol. 2, pp. 240, 241, 245. A review of the record demonstrates that none of the trial

---

[6]The State argued in its response to Sims's federal habeas petition that this particular claim was procedurally barred. ROA, Vol. 2, Tab 17, pp. 23-24.

court's comments conveyed its opinion about the evidence or either party's case. There was no impropriety in the trial court's rulings or comments.

Sims contends that the trial court continually interrupted counsel's examination of witnesses and denigrated defense counsel's questioning of two key state witnesses. Having reviewed the record, we see no indication that these admonitions directly or indirectly influenced the jury. The trial court had complete control of the case and his courtroom. The court treated all parties equitably in ensuring that Sims received a fair trial. Counsel's decision not to challenge the trial court's comments cannot be deemed deficient.

Sims claims he received ineffective counsel because his lawyers failed to object to improper prosecutorial comments and argument. The prosecutor's comments of which Sims complains here consist of vouching for the credibility of witnesses, referring to evidence not in the record, and attesting to the guilt of the defendant. Sims's counsel did not object during the closing argument to these comments. Heffernan stated at the post-conviction hearing that he overlooked the objection at closing, but also commented that "it doesn't make a difference what a lawyer says at closing .... [the] court goes to great lengths to instruct [the] jury that what counsel says in closing is not evidence." R. Vol. 13, p. 189.

We conclude that counsel's actions were not deficient; however, assuming *arguendo* that counsel's failure to object to the prosecutor's comments constituted ineffective assistance, Sims has shown no prejudice as a result of this inaction. Five eyewitnesses, including two accomplices, identified Sims during the trial as the participant in the murder/robbery. Considering this eyewitness testimony, the prosecutor's comments did not prejudice Sims's trial.

16

(f) Sims argues that his lawyers committed numerous errors and omissions during trial which undermined confidence in the verdict. After reading the record and determining that all of Sims's claims of ineffectiveness are without merit, we conclude that this claim too must fail. A defendant is entitled to a fair trial, not a flawless one. *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Our review of the record convinces us that Sims received extremely effective counsel. His attorneys vigorously cross-examined the State's witnesses and argued for the exclusion of vital evidence. Moreover, we note that the trial court complemented defense counsel on their performance. R. Vol. 4, p. 768. Based on the totality of the circumstances, Sims's counsels' performance did not undermine confidence in the verdict.

2. *The use of hypnotically enhanced testimony*

Sims claims that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated during trial when the State used unreliable hypnotically enhanced testimony. The district court addressed this claim on the merits and denied relief. A merits determination is not necessary, however, because the claim is barred by the non-retroactivity doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (bars retroactive application in a 28 U.S.C. § 2254 proceeding of any rule of law which had not been announced at the time the petitioner's conviction became final). *See Spaziano v. Singletary,* 36 F.3d at 1043, (applying three steps of *Teague:* first step is to determine when the defendant's conviction and sentence became final; second step is determining whether the rule the habeas petitioner seeks or upon which he relies is a new one; third step is determining whether either of the two exceptions—rules that place conduct beyond the reach of criminal law or new watershed rules of criminal procedure which implicate the fundamental fairness and accuracy of the criminal proceeding—is applicable) (citations omitted). The conviction

17

and sentence in this case became final for *Teague* purposes on June 11, 1984, (when the United States Supreme Court denied certiorari) while the conviction and sentence in *Spaziano* became final on July 2, 1984. *Spaziano* controls the disposition of this claim because we determined in that case that the *Teague* bar applied to the use of hypnotically enhanced testimony.[7] Accordingly, the same rationale applies in Sims's case and he is entitled to no relief on this claim.

3. *Defense counsel's cross-examination of Baldree*

This issue was addressed by the Florida Supreme Court on direct appeal and decided adversely to Sims. 444 So.2d at 924. The record indicates that the trial court abruptly halted defense counsel's cross-examination of Baldree when he began to question Baldree about the individual whom Sims was said to resemble. Defense counsel conducted extensive cross-examination of Baldree, and the State's objection and the court's ruling came only after the defense went into matters beyond the scope of Baldree's direct examination. Defense counsel could

---

[7]The State also contends that this claim is procedurally barred because it could have been, but was not raised, on direct appeal. In Sims's Rule 3.850 petition, he claimed that he was entitled to reversal based upon Florida Supreme Court's decision in *Bundy v. State,* 471 So.2d 9 (Fla.1985). *Bundy* was not decided on federal constitutional grounds and the Florida Supreme Court's denial of relief on Sims's claim was predicated solely on Florida law. Thus, Sims's claim is procedurally defaulted. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although the Supreme Court has admonished us that when the State argues that a claim is both *Teague* barred and procedurally barred, we ordinarily should decide the procedural bar issue, *see Lambrix v. Singletary,* 520 U.S. 518, ----, 117 S.Ct. 1517, 1523, 137 L.Ed.2d 771 (1997), we decline to do so in this case because the application of *Teague* is substantially clearer. *Davis v. Singletary,* 119 F.3d 1471, 1477-78 (11th Cir.1997)(deciding that *Teague,* instead of procedural bar, was more clearly applicable to bar retroactive application of *Espinosa v. Florida,* 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992)).

have made a proffer to show the relevance of the information they were seeking to bring before the jury, but they did not.[8] Accordingly, we find no Sixth Amendment violation.

4. *False evidence claim*

Sims contends that the prosecution failed to reveal the actual terms of the plea agreement extended to Halsell for his testimony. According to Sims, during trial, the prosecutor falsely argued that Halsell's plea agreement included a ten year capped sentence which he had begun to serve at the time of trial. However, Halsell had not yet been sentenced at the time of trial and when he was actually sentenced, he received only a two year term of imprisonment. The Florida Supreme Court found this issue without merit, *see Sims v. State,* 602 So.2d at 1257; so did the district court. We agree with its findings.

At trial, the prosecution asked Halsell if he was under a ten year sentence for armed robbery and he replied that he was. R. Vol. 2, p. 299. The prosecution later asked if part of their deal was to cap his sentence at ten years and Halsell responded yes. R. Vol. 2, p. 300. At the Rule 3.850 hearing, both defense counsel testified that they understood that Halsell's sentence would consist of a ten year cap. R. Vol. 13 & 14, p. 162-63, 278-79, 284-85, 315. Having read the record in its entirety, we see no deliberate deception by the prosecution. Accordingly, Sims's claim lacks merit.

---

[8]Sims relies on the statement by the Florida Supreme Court that defense counsel could have made a proffer to show the relevance of the information they were seeking to introduce to support his claim of ineffective assistance of counsel for failing to make a proffer and explain why the information was vital. Sims argued in his Rule 3.850 petition that trial counsel would have brought out the relationship between *Robinson* (another participant in the crime who was waiting in the "getaway" car) and Gayle (Sims's look-a-like) as opposed to *Baldree* and Gayle. In his federal habeas petition, Sims relies upon the Baldree-Gayle connection. This claim, as discussed *infra,* is procedurally barred because it was not presented to the state courts. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Footman v. Singletary,* 978 F.2d at 1211.

19

5. *Brady claim*

Sims argues that the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it withheld exculpatory evidence he alleges would have linked Gayle to the crime. The alleged exculpatory evidence was a receipt for the purchase of "lock pullers"[9] and a claim that the seller of the lock pullers had identified a photograph of Gayle as the buyer. Sims argues that this exculpatory evidence prejudiced him because it links Gayle to Robinson and shows that Gayle and Robinson together purchased the lock pullers that were used in the instant robbery. Sims contends this evidence would have supported his theory of defense that Gayle was the fourth participant in the crime, not Sims.

 In order to establish a violation of *Brady,* Sims must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros,* 866 F.2d 1304, 1308 (11th Cir.1989) (citations omitted). For *Brady* purposes, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Stewart,* 820 F.2d 370, 374 (11th Cir.1987)(quotations & citation omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a

---

[9]Lock pullers are used by individuals to steal cars. The lock puller provides access to the ignition of a car and enables the thief to start the car without a key.

verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Sims abandoned the photograph component of this claim on appeal of the denial of his motion for post-conviction relief. Therefore, this portion of the argument is procedurally barred for federal habeas purposes. *Lindsey v. Smith,* 820 F.2d 1137, 1143 (11th Cir.1987). The receipt portion of this argument lacks merit. The evidence was not "material" in the *Brady* sense. The receipt was undated and unsigned and could not have connected Gayle to Robinson. This evidence in no way demonstrates that Gayle was at the robbery/murder scene and, therefore, it was immaterial. In light of the evidence establishing Sims as the triggerman, the exclusion of this document did not affect the outcome of Sims's trial.

6. *Prosecutorial misconduct during closing argument at the penalty stage*

Sims alleges that the prosecutor made several egregious statements during closing argument that denied him a fair trial. Specifically, the prosecutor vouched for the credibility of witnesses, expressed his personal belief in Sims's guilt, made personal attacks on defense counsel, and referred to evidence not presented at trial. This claim was raised on direct appeal, and the Florida Supreme Court found the issue procedurally barred because it was not preserved for appellate review. 444 So.2d at 924. We conclude the district court correctly determined that the claim was procedurally barred for federal habeas purposes.

A federal court must dismiss those claims that are procedurally barred under state law. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Since the Florida Supreme Court found this claim to be procedurally barred, we are precluded from addressing the merits of this claim unless Sims can show "cause and prejudice" for his procedural default or that he is "actually

innocent." *Johnson v. Singletary,* 938 F.2d 1166, 1174-75 (11th Cir.1991). Sims has not demonstrated that either exception applies to his case. Accordingly, the claim is procedurally barred.

7. *Evidentiary hearing on the prosecution-proneness of the jury*

The district court determined that this issue lacks merit. We agree. In *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court held that a defendant was not entitled to have on the jury individuals who are unalterably opposed to the death penalty. Accordingly, the trial court did not err when it denied Sims's motion for an evidentiary hearing to determine the "prosecution proneness" of the empaneled jury.

8. *Denial of motion for mistrial*

Sims asserts that he was denied a fair trial because the trial court denied his motion for mistrial based on a witness's reference to Sims's "mug shots." The Florida Supreme Court rejected this argument on direct appeal. 444 So.2d at 924. The court found that "[s]ince these words were used by a defense witness and did not specifically refer to a prior conviction, we find that this vague reference to other possible criminal activity was not so prejudicial as to require a new trial." *Id.* The district court also denied Sims relief on this claim.

During the prosecutor's cross-examination of defense witness Detective Salerno, the witness mentioned that he had a "mug book" before he compiled the photographic line-up. R. Vol. 4, p. 650. Defense counsel objected to this "mug book" reference and the trial court overruled the objection. The witness later referred to a "mug shot" of Sims. *Id.* at 651. Defense counsel objected and moved for a mistrial. The trial court overruled the objection and admonished the witness not to use "that phrase again." *Id.* at 652.

22

In habeas corpus proceedings, federal courts generally do not review a state court's admission of evidence. *McCoy v. Newsome,* 953 F.2d 1252, 1265 (11th Cir.1992). We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial. *Id.* Accord *Baxter v. Thomas,* 45 F.3d 1501, 1509 (11th Cir.)(evidentiary ruling claims reviewed only to determine whether the error "was of such magnitude as to deny fundamental fairness"), *cert. denied,* 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995). Sims cannot demonstrate that the trial court's admission of this evidence adversely affected his trial. Additionally, such trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)(quotation omitted). In light of the identification testimony showing Sims as the triggerman, the brief reference to the "mug shots" did not have a substantial and injurious effect or influence on the jury verdict.

9. *Post-trial inquiry of juror*

Sims claims that his federal rights were violated when the trial court ended post-trial inquiry of a juror and denied Sims's motion for a new trial. Defense counsel requested to interview the jurors following their verdict, and during the examination, one juror testified that the jury talked freely about the fact that Sims did not take the stand and testify in his own behalf. At this point, the trial court halted the interview.

Sims raised this issue on direct appeal, and the Florida Supreme Court concluded that the jury had been properly instructed not to consider Sims's failure to testify and that the trial court had not erred in refusing to delve further into the matter. 444 So.2d at 924-25. "The general rule in

23

Florida is that a juror's testimony is relevant only if it concerns matters which do not essentially inhere in the verdict itself." 444 So.2d at 925 (citing Florida cases). The Florida Supreme Court commented that a juror's "consideration of a defendant's failure to testify is not the same as considering evidence outside the record, but is rather an example of its misunderstanding or not following the instructions of the court." *Id.* The district court agreed, and so do we.

Although Sims contends that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated, he offers nothing to support his allegations. In light of this failure and the identification testimony showing Sims as the triggerman, Sims is entitled to no relief on this claim. Moreover, the trial court instructed the jury that Sims had no obligation to testify and that the State had to prove Sims's guilt beyond a reasonable doubt. *See* R. Vol. 4, p. 744. We must assume that the jury followed the instructions of the trial court. *United States v. Chandler,* 996 F.2d 1073, 1088 (11th Cir.1993)("The jury is presumed to follow the instructions they are given."), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994).

10. *General verdicts on allegedly multiple and inconsistent counts*

Sims argues that the trial court erred in permitting the jury to return general verdicts on allegedly multiple and inconsistent counts of first degree murder. Sims states that the crime of murder was charged in alternative counts and that the trial court erred in denying his motion to require the State to select and pursue only one of the two counts. The Florida Supreme Court rejected this contention on direct appeal. 444 So.2d at 925. The district court correctly denied this claim on the basis of *Schad v. Arizona,* 501 U.S. 624, 644-45, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), in which the Supreme Court rejected a petitioner's contention that a general guilty verdict that fails to differentiate between premeditated and felony murder is constitutionally inadequate.

24

The jury did not need to agree on the precise theory of first degree murder, only the offense itself. The jury's verdict was not fundamentally flawed.

11. *Ineffective assistance of appellate counsel*

Sims claims that his appellate counsel was ineffective for failing to raise numerous issues on appeal: (1) that the trial court committed fundamental error by repeatedly chastising defense counsel in the jury's presence; (2) that Sims was denied the right to be present at his trial; (3) that the failure to require a special verdict violated Sims's right to a unanimous jury verdict; and (4) that requiring Sims to prove that death was not the appropriate punishment violated his right to a reliable and non-arbitrary sentencing determination. In addition, Sims claims his appellate counsel was ineffective for failing (a) to ensure a complete record or file a supplemental brief, (b) to argue denial of Sims's right to be present at all stages of his trial, (c) to challenge the denial of the motion for change of venue, and (d) to challenge the denial of the motion to suppress identification testimony. Sims raised numerous claims of ineffective assistance of appellate counsel in his state habeas motion. R. Vol. 27, Tab 1. Issues one, three, and four were not raised in that petition. The remaining grounds were addressed and rejected by the Florida Supreme Court. *Sims v. Singletary,* 622 So.2d 980 (Fla.1993).

A federal court must dismiss those claims or portions of claims that either (1) have been explicitly ruled procedurally barred by the highest state court considering the claims, *Harris v. Reed,* 489 U.S. 255, 261-62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), or (2) are not exhausted but would clearly be barred if returned to state court. *Id.* at 269-70, 109 S.Ct. 1038 (O'Connor, J., concurring); *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This procedural bar applies to claims of ineffective assistance of counsel in habeas cases. *Footman v.*

*Singletary,* 978 F.2d at 1211. Thus, claims one, three, and four are procedurally barred because they were not presented in the state courts and would be barred if they were now presented there.[10] Sims cannot establish "cause and prejudice" or "actual innocence" to excuse his procedural default. *Johnson v. Singletary,* 938 F.2d 1166, 1174-75 (11th Cir.1991). Accordingly, these claims are procedurally defaulted.

As noted earlier, claims two and (a) through (d) were asserted by Sims in his state habeas petition, *see* R. Vol. 27, Tab 1, pp. 73-83, and were rejected by the Florida Supreme Court. 622 So.2d at 981 ("We find no other valid basis for a claim of ineffectiveness here."). Our review of the record demonstrates that none of the claims of ineffective assistance of appellate counsel merit relief.[11]

12. *Denial of right to present a defense and have a fair trial*

Sims asserts that he was denied the right to present a defense and have a fair trial based on the trial court's exclusion of three documents. This claim was not, but could have been, raised on direct appeal or in Sims's state post-conviction motion. The failure to raise this claim to the state courts is a procedural default that bars federal habeas review of the claim. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Further, Sims's failure to raise this claim in his Rule 3.850 motion is a procedural default for habeas purposes. *Bolender v. Singletary,* 16 F.3d 1547, 1569 n. 29 (11th Cir.1994). Accordingly, this claim is procedurally barred.

---

[10]*See Doyle v. Singletary,* 655 So.2d 1120, 1121 (Fla.1995)(ineffective assistance of appellate counsel claims not raised in first habeas petition are procedurally barred from being raised in a subsequent habeas petition).

[11]The district court discussed the merits of Sims's claims of ineffective assistance of appellate counsel and found no merit. We defer to the district court's findings on this claim. ROA, Vol. 3, Tab 33, pp. 35-40.

In conclusion, we affirm the district court's denial of federal habeas relief on the guilt stage issues raised by Sims. We now turn to the sentencing stage issues, upon which the district court granted Sims relief.

B. *Penalty Stage Issues*

1. *Whether errors during the guilt phase require vacating the death sentence*

Sims claims that numerous errors occurred during the guilt phase which require vacating his death sentence. These alleged errors were ineffectiveness of counsel, unnecessary use of shackles and excessive security measures, unreliable identification testimony, and the prosecutor's knowing use of perjured testimony. The Florida Supreme Court rejected Sims's contention on appeal from the denial of Sims's motion for post-conviction relief, 602 So.2d at 1253, 1258; however, the district court determined that these alleged errors cumulatively resulted in prejudice to Sims during the sentencing phase. The district court's holding is erroneous.

The district court's reliance on the ineffective assistance of counsel at the guilt stage claim is based upon the hypnosis issue which is foreclosed by binding precedent, *see Spaziano,* and it is inconsistent with the district court's holding that counsel was not ineffective at the guilt phase because the prejudice component had not been established. ROA, Vol. 3, Tab 33, pp. 11-17. The district court's holding as to the shackling/excessive security measures claim is incorrect because this "claim" was never pled by Sims. Sims raised this claim in the context of an ineffective assistance of counsel claim, and the district court properly denied relief. *Id.* at pp. 8-9. Thus, the substantive shackling claim is procedurally barred because it was never presented to the state courts, *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and the district court's reliance on it to grant sentencing stage relief is erroneous.

27

The district court also relied on the unreliable hypnotically induced identification testimony as cumulative error which prejudiced Sims. As stated previously, this claim is barred by the non-retroactivity doctrine of *Teague*. Accordingly, the district court's reliance on this claim is misplaced.

The final cumulative error component was the district court's finding that the State knowingly used perjured testimony when the prosecutor argued that Halsell's plea agreement included a ten year sentence which he had begun to serve at the time of the trial knowing that Halsell had not yet been sentenced. This finding is inconsistent with the district court's finding that there was no *Giglio* violation. ROA, Vol. 3, Tab 33, p. 19. Accordingly, the district court erred in finding cumulative guilt stage error which prejudiced Sims during the penalty phase.

2. *Whether the Hitchcock error requires vacating the death sentence*

Sims also alleges that there was constitutional error with regard to his sentencing because the jury, trial judge, and the reviewing court were limited in their consideration of mitigating evidence.[12] Sims contends that a violation of *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), occurred which entitles him to penalty phase relief. The Florida Supreme Court found *Hitchcock* error, but concluded that it was harmless. 602 So.2d at 1257. The district court reached a contrary conclusion. ROA, Vol. 3, Tab 33, p. 44. We disagree with the district court's conclusion because it committed several legal errors in determining that the *Hitchcock* error was not harmless beyond a reasonable doubt.

---

[12]These specific claims were listed in Sims's federal habeas petition as issues XI, XII, XIII, and XV. *See* ROA, Vol. 2, Tab 20, pp. 106-162.

28

As the Florida Supreme Court noted, the jury instruction was "not a model of clarity." 602 So.2d at 1257. In its instruction, the trial court listed the aggravating factors which the jury could consider, *see* R. Vol. 5, p. 43-45, then mentioned the mitigating circumstances. The pertinent portion of the instruction read: "The mitigating circumstances which you may consider if established by the evidence *among others* are these: ..." *Id.* at 45. The trial court then listed the statutory mitigating factors for the jury to consider. The trial court's only reference to non-statutory mitigating factors was the phrase "among others." Defense counsel did present non-statutory mitigating evidence at the sentencing hearing via testimony from a young woman with whom Sims had lived, the woman's mother and daughter, and a fellow inmate at the jail who testified to Sims's attempt to counsel another inmate away from a life of crime. *Id.* at pp. 8-12, 13-20, 21-23, & 24-27.

We conclude that the trial court's instructions did not limit the jury's consideration of non-statutory mitigating circumstances and therefore did not constitute a *Hitchcock* error. *See Buchanan v. Angelone,* --- U.S. ----, ----, 118 S.Ct. 757, 761, 139 L.Ed.2d 702 (1998)(reiterating the principle that a "sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence."). Sims's sentencer was not precluded from considering all relevant mitigating evidence. The trial court instructed the jury to consider certain mitigating factors, *among others*. This instruction did not preclude the jury from considering all the mitigating evidence presented by defense counsel but, instead, instructed them to consider all the evidence that was presented. Accordingly, there was no *Hitchcock* error in this case.

Assuming *arguendo* that there was a *Hitchcock* error, the error was harmless beyond a reasonable doubt. We employ the *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), harmless error analysis to the *Hitchcock* error. *See Williams v. Singletary,* 114

29

F.3d 177, 180 (11th Cir.1997)("*Brecht* applies only at the second step of the inquiry in determining if an already established error is harmless."), *cert. denied,* --- U.S. ----, 118 S.Ct. 712, 139 L.Ed.2d 654 (1998).

In *Booker v. Singletary,* 90 F.3d 440, 442 (11th Cir.1996), we stated:

In *Brecht,* the Court held that *Chapman* 's [*v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ] standard of "harmless beyond a reasonable doubt" was inapplicable to habeas corpus review. In place of *Chapman,* the Court substituted the standard established by *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), for resolving the harmless error issue on the direct review of a criminal conviction. The *Kotteakos* standard asks whether the error "had substantial and injurious effect or influence in determining the jury's verdict." By substituting *Kotteakos* ' standard for *Chapman* 's, the Court in *Brecht* made it easier for a state to show that a constitutional violation did not prejudice an habeas petitioner's case.

90 F.3d at 442 (11th Cir.1996) (citations omitted). We have held that *Hitchcock* errors are "trial type" errors governed by *Brecht. See e.g., Horsley v. State of Ala.,* 45 F.3d 1486, 1492 (11th Cir.1995); *Bolender v. Singletary,* 16 F.3d 1547 (11th Cir.1994).

The Florida Supreme Court found that there was other non-statutory mitigating evidence that could have been presented to the jury for their consideration, but it was not overwhelming in light of the aggravating factors. 602 So.2d at 1257. The district court disagreed and found that there was no evidentiary support for the allegedly "valid" aggravating factors. The district court found that the only evidence relating to the first factor (that Sims had previously been convicted of a violent felony) was a stipulation read by the prosecutor which informed the jury that Sims had previously been convicted of assault with attempt to commit robbery. The district court cites no authority for the proposition that a stipulation is not adequate evidence. The district court found that the second aggravating factor (that the capital felony was committed while the defendant was engaged in the commission of the robbery) was established, but this factor alone cannot be sufficient to support a

death sentence. As to the third factor, the district court found no evidence in the record from which the jury could find beyond a reasonable doubt that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest. As its basis for this finding, the district court stated that there is no evidence in the record that the victim was a deputy sheriff.

On the contrary, we find sufficient support in the record for this aggravating factor. One of Sims's co-defendants, Halsell, testified that Sims came to the motel room bleeding and said he killed a cop. R. Vol. 2, pp. 316, 350. Baldree also testified that Sims stated he killed a cop. R. Vol. 3, p. 437. A bystander testified that she saw a deputy draw a gun. R. Vol. 3, p. 470. Accordingly, the district court clearly erred in finding no evidentiary support for the valid aggravating factors.

The district court found that in light of the other non-statutory mitigating evidence which could have been presented, if counsel had been effective, the death sentence was not appropriate considering the lack of evidentiary support of the valid aggravating factors. We first observe that most of the non-statutory mitigating evidence which Sims's asserts was not presented actually was presented. Defense counsel presented the testimony of a woman with whom Sims had lived and nursed while she was ill, the woman's mother and daughter, and a fellow inmate. The only specific information defense counsel did not present was evidence of Sims's troubled childhood. Sims argues that counsel's failure to present this evidence was ineffective assistance. We disagree. Defense counsel stated at the Rule 3.850 hearing that Sims specifically told them not to bother his family members. R. Vol. 13, p. 230. His attorneys explained the necessity of mitigation to Sims, but he would not provide them any information. Counsel cannot be deemed deficient for failing to present additional evidence of mitigation of which they were unaware due to Sims's refusal to assist them in obtaining the information. The record discloses that defense counsel performed well.

31

Accordingly, the district court erred in finding that Sims's attorneys were ineffective in failing to present non-statutory mitigating evidence at the penalty phase.

The district court also determined that it was error for the sentencing court not to consider the evidence of sentencing disparity between Sims and his co-defendants. This error, according to the district court, also contributed to the substantial and injurious effect or influence underlying the jury's sentencing recommendation. The Florida Supreme Court specifically held that the disparity between Sims's sentence and the sentences his co-defendants received is not a mitigating factor. 602 So.2d at 1257. We reject Sims's argument that his co-defendant's lesser sentences constituted a mitigating factor, since the evidence shows that Sims was the triggerman. *See Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir.1995). As elicited from counsel at oral argument before this panel, the jury and the court knew that one of the co-defendants was only going to receive a two-year sentence and thought the other defendant was receiving a ten-year sentence. Thus, the court knew most of the sentence disparity facts anyway and this fact negates Sims's contention. Accordingly, this alleged mitigating factor was not really mitigating after all and the district court erred in concluding that it had a substantial and injurious effect on the jury's sentencing determination.

The district court then enumerated several sentencing stage errors which, in the court's judgment, preclude a finding that the *Hitchcock* error was harmless beyond a reasonable doubt.

ROA, Tab 33, pp. 48-49.[13] The first three reasons[14] are a restatement that there was a *Hitchcock* error. As we stated previously, there was no *Hitchcock* error and even assuming that there was error, it was harmless. Thus, we disagree with the district court's determination that numerous guilt stage and penalty stage errors preclude a finding that the *Hitchcock* error was harmless.

First, the district court found that the trial judge and jury would not have sentenced Sims to death or recommended a death sentence, respectively, if they had properly weighed the aggravating factor or factors. As stated previously, the aggravating factors were valid and supported by record evidence. Second, the district court also found that the jury was not informed of the importance of its recommendation. The district court cites no authority for this holding. Assuming, however, that this is a cognizable claim under *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)[15], the *Teague* bar would apply because *Caldwell* announced a new rule of law which does not come within *Teague*'s exception for watershed rules fundamental to the integrity of the

---

[13]The district court also enumerated four guilt stage errors which preclude a finding that the *Hitchcock* error was harmless: (1) prosecutorial misconduct; (2) use of hypnotically enhanced testimony; (3) ineffective assistance of counsel as to the hypnotically enhanced testimony; and (4) the heightened security could have made the death penalty vote more likely. As stated previously, none of these claims merits guilt stage relief and, accordingly, cannot form the basis of sentencing stage relief.

[14]These enumerated reasons are: (1) the trial judge failed to properly charge the jury regarding nonstatutory mitigating factors; (2) the trial judge permitted the prosecutor to make final argument which told the jury that they could only consider the statutory mitigating factors; and (3) when the jury's confusion concerning mitigating and aggravating factors was made known by way of a request for a copy of the Florida statute which set forth the factors to be considered, the trial judge failed to clear up the confusion and recharged the jury with the same inadequate charge given previously.

[15]In *Caldwell,* the Court held that the Eighth Amendment may be violated when a prosecutor minimizes the jury's sense of responsibility in its determination that death is the appropriate punishment. 472 U.S. at 340, 105 S.Ct. 2633.

33

criminal proceeding. *See Sawyer v. Smith,* 497 U.S. 227, 229, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

Next, the district court found that the prosecutor made improper and prejudicial arguments relating to the victim which had the result of inviting the jury to consider impermissible aggravating factors. This claim is based on *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), which was overruled in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The net result is that victim impact statements and arguments are permissible. Thus, the district court's reliance on this claim is misplaced.

Fourth, the district court found that the jury was not properly advised of the alternative sentence of life with a mandatory minimum of twenty-five years. We are at a loss to understand the district court's reliance on this claim since it was never raised in the state courts and, thus, is procedurally barred. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Fifth, the district court found that the trial court improperly considered a 1958 common law robbery conviction in aggravation when no evidentiary basis existed for the conviction. This ignores the fact that there was another conviction supporting that aggravating circumstance—a 1971 assault with intent to commit robbery. 602 So.2d at 1258. Accordingly, any error involving the 1958 conviction was harmless. *Id.*

Sixth, the district court relied on the fact that the prosecutor failed to provide evidence relating to the sentencing disparities of Sims and the co-defendants. As stated previously, this is not a mitigating circumstance because Sims was the triggerman.

Lastly, the district court found that trial counsel was ineffective at sentencing. The district court concluded that the defense attorneys did not take their responsibilities at the sentencing stage

34

seriously. We disagree. The record discloses that defense counsel presented non-statutory mitigating evidence at the sentencing stage. The record also reveals that defense counsel made an effective argument at the sentencing stage. A defense attorney has limited resources and must make the best decisions possible regarding allocating resources based upon his or her knowledge and experience. As the trial court noted, defense counsel did a commendable job. R. Vol. 4, p. 768.

For the foregoing reasons, we reverse the district court's grant of sentencing stage relief and remand this case with directions that the district court reinstate the death penalty. We affirm the district court's denial of habeas relief as to the guilt stage errors.

AFFIRMED in part, REVERSED in part, and REMANDED.