[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13815
Non-Argument Calendar

_____

D. C. Docket No. 04-00003-CV-4-RH-WCS

JEREMIAH E. BEAZLEY,

                                                    Petitioner-Appellant,

versus

JAMES V. CROSBY,
CHARLIE CRIST,

                                                    Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 23, 2006)**

Before ANDERSON, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

       Appellant Jeremiah E. Beazley, a Florida prisoner serving a total 34-year

sentence for attempted manslaughter with a firearm, discharging a firearm within

1,000 feet of another person, shooting at or into a dwelling, and being a felon in possession of a firearm, appeals the denial of his *pro se* habeas corpus petition, which he filed pursuant to 28 U.S.C. § 2254. In his petition, Beazley claimed, among other things, that the state trial court violated his constitutional rights to confront and cross-examine witnesses by refusing to allow him to call Robert Martin, a co-defendant who pled guilty to the same offenses and whose testimony would have been relevant to impeach the state's witness, Shannon Knight, another of Beazley's co-defendants.

At trial, Domello Bolware testified that, on September 30, 1997, as he was walking in the front yard of his brother's girlfriend's house at 919 Cone Avenue, several shots were fired at him from a red Mustang with tinted windows. Knight testified that on September 30th: (1) she was driving her friend's red Mustang while Beazley sat in the passenger seat, and Martin sat in the back seat; (2) Beazley told her where to drive, to roll down her window, and to drive slowly; (3) Beazley started firing his gun and told her to drive faster; (4) the first time that she saw that Beazley had a gun was when he started firing it; (5) she did not see what Martin was doing; (6) after the shooting, they went to McDonald's, where she got out of the car and started yelling; and (7) then, Beazley and Martin dropped her off at her apartment. She denied that a weapon went off in the car on the way to Cone

2

Avenue and created a hole in the floorboard. George Perkins testified that, on September 30th, Beazley: (1) came over to his house with Martin, told him that he "was going to fire some warning shots" at someone who had "ripped him off," and took a .357 firearm; (2) returned later that night with Martin, two firearms, and a handful of empty cartridges and asked Perkins to "hold onto" the firearms; and (3) told Perkins that he had "fired some warning shots to send out a message, let him know not to rip him off again."

During his case-in-chief, Beazley indicated that he wished to call Martin as a witness, to which the state objected that Beazley was calling Martin for the sole purpose of impeaching him. Out of the hearing of the jury, Martin proffered that he would have testified, among other things, that: (1) he participated in the drive-by shooting with Beazley and Knight; (2) they left from Beazley's apartment; (3) he had two .357 guns with him and fired "a few" shots; (4) he did not think that Knight knew that he had a gun, but she could see that Beazley had a gun; (5) as they were on their way to Cone Avenue, one of the two guns went off and blew a hole in the floorboard of the Mustang; and (6) after the shooting, they went to Perkins's apartment to get rid of the guns and the car. He denied that they went to McDonald's and that Knight got out of the car. When asked whether he had written a letter to Beazley, apologizing for "l[ying] on him" and stating that it was

3

just he and Knight in the car, Martin testified that he had copied the letter from a letter that Beazley had sent him and he previously had contacted the state about the effect of changing his story on his plea bargain and sent the state's response to Beazley. He denied telling other inmates that Beazley had nothing to do with the shooting.

The court sustained the state's objection to Martin's testimony on the grounds that the primary purpose of calling Martin would be to impeach him by introducing evidence of prior inconsistent statements. The jury found Beazley guilty as to all five counts and he appealed his convictions. The state appellate court considered the exclusion of Martin's testimony, but summarily affirmed Martin's convictions. Beazley petitioned for habeas corpus and the district court found that exclusion of Martin's testimony did not violate Beazley's federal constitutional rights because Martin's testimony was "useless" for both the state and Beazley. Accordingly, the district court denied Beazley's petition for habeas corpus. However, the district court granted Beazley a certificate of appealability on the following issue only: "whether petitioner is entitled to relief on the ground that the exclusion of the testimony of Robert Martin was unconstitutional."

On appeal, Beazley argues that the state court violated his constitutional rights when it excluded the testimony of Martin, whose testimony would have

4

(1) called into question Knight's testimony, which was the only direct evidence that Beazley fired the shots; (2) contradicted testimony about the guns that were found in Perkins's apartment; and (3) permitted Beazley to call several inmates to testify that Martin told them that Beazley was innocent. He argues that he was not attempting to impeach Martin, but to elicit Martin's version of the events.

A district court's denial of a habeas petition under 28 U.S.C. § 2254 is reviewed *de novo*. *Sims v. Singletary*, 155 F.3d 1297, 1304 (11th Cir. 1998). A habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). However, the deferential standard of § 2254(d) does not apply "when there is grave doubt about whether the state court applied the correct rule of governing federal law." *Romine v. Head*, 253 F.3d 1349, 1365 (11th Cir. 2001). "The state court's failure to cite the relevant Supreme Court precedents does not mean that AEDPA deference does not apply." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003). "All that is required

under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." *Id.*

"A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.' A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite our opinions." *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 10, 157 L. Ed. 2d 263 (2003) (internal citations omitted).

The Fifth and Sixth Amendments guarantee a criminal defendant the rights to obtain favorable witnesses by compulsory process and an opportunity to present evidence in his favor. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). The Supreme Court has held that a defendant's right to have compulsory process for obtaining witnesses in his favor is violated when the defendant is arbitrarily denied the right to present a witness who is capable of testifying and "whose testimony would have been relevant and material to the defense." *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 1925, 18 L. Ed. 2d 1019 (1967).

We conclude from the record that the state appellate court's decision that the

testimony should be excluded because its probative value was outweighed by the improper impeachment purpose was not contrary to, or an unreasonable application of, "clearly established Federal law." Moreover, any error in excluding Martin's substantive testimony was harmless because, even without considering the testimony of Knight, sufficient evidence supported Beazley's convictions. Accordingly, we affirm the district court's order denying habeas relief.

**AFFIRMED.**